[Crim. No. 474.   Department One.—December 8, 1898.]

THE PEOPLE, Respondent, v. CHARLES WORTHINGTON, Appellant.

CRIMINAL LAW—HOMICIDE—MURDER IN THE FIRST DEGREE—SUFFICIENCY OF EVIDENCE.—The evidence reviewed, and held sufficient to sustain a verdict of guilty of murder in the first degree.

ID.—REQUESTED INSTRUCTION—BLOW STRUCK BY SON OF DECEASED—DAZED CONDITION OF DEFENDANT.—An instruction requested by the defendant to the effect that if a blow struck by the son of the deceased, acting by his direction, caused a dazed condition of the mind of the defendant, such as to preclude the exercise of deliberation and premeditation, the defendant could not be found guilty of murder, is erroneous, in omitting the essential element that the blow was not justified in law. A dazed condition of mind not unlawfully caused by the deceased, and not amounting to insanity, could not reduce the grade of the crime below murder in the second degree.

ID.—INAPPLICABLE INSTRUCTIONS.—Where the evidence of the defendant shows that he was not at the time of the homicide in such a dazed condition of mind as to preclude his being guilty of murder, instructions based upon such dazed condition of mind are properly refused as inapplicable.

ID.—EVIDENCE—CROSS-EXAMINATION—BEGINNING OF PRIOR ALTERCATION—BIAS OF WITNESS.—In cross-examination of the son of the deceased, who was an active participant in a prior altercation between defendant and the deceased, where it appeared that no weapons were used therein by the deceased, it is not error to exclude an inquiry as to who began such altercation; and the circumstances of the case being sufficient to indicate the animus, interest, and bias of the witness, the defendant is not prejudiced by not being allowed further to prove such animus, interest and bias.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. E. W. Risley, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, for Appellant.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy Attorney General, for Respondent.

GAROUTTE, J.—Defendant has been convicted of the crime

of murder in the first degree and sentenced to imprisonment for life. His counsel now strenuously contend that the evidence at most only shows a case of manslaughter. The facts surrounding the homicide are few, and it can hardly be said that a substantial conflict is disclosed by the evidence upon any important matter.

The defendant Worthington, the deceased Motley, and Capt. Motley, his son, all worked upon a ranch. In its general features the trouble may be pictured by the following statement: In the early morning angry words arose between the deceased and the defendant, and they engaged in a scuffle. Thereupon, possibly at the suggestion of the deceased, his son injected himself into the altercation and struck the defendant a violent blow upon the head with a heavy stick. Thereafter the defendant struck deceased with a stick, and the parties were then separated. Defendant at this time threatened to go to the house and get his gun. The deceased and his son turned toward the barn, and defendant proceeded to the house, a distance of four hundred and thirteen feet. Almost upon his arrival at the house he saw a man coming from the direction of the barn. He thereupon secured from the Japanese cook a loaded shotgun and some extra shells, which he placed in his pocket, and, standing upon the porch, awaited the arrival of the man, who at this time was disclosed to be the deceased. When a distance of several paces still divided them angry words arose, the defendant testifying to the effect that he "ordered the deceased to come no nearer, but deceased gave the command no heed, whereupon he fired both barrels of the gun, inflicting mortal wounds." The deceased was unarmed.

If this lamentable occurrence from beginning to end may be said to comprise but a single broil or affray, then the killing by the defendant of the deceased may well have been declared by the jury to have constituted the crime of manslaughter; but if the immediate affray resulting in the death of the deceased may be considered as a separate and distinct encounter—and this was a pure question of fact for the jury—then clearly this court cannot say in law that the killing was not murder. The first trouble may well have filled the heart of the defendant with malice, a malice that satisfied itself only with Motley's death. The

deceased was not armed when killed. He was several paces distant, standing upon the ground. The defendant was upon the porch, at an elevation of several feet, with his gun loaded and ready, and extra ammunition at hand. It was an open question, also, whether deceased came to the house in pursuit of defendant. Again, before going to the house defendant had threatened to use his gun. Under all these circumstances we are not prepared to say that the evidence is too weak to support a verdict of murder. In *People v. Bruggy,* 93 Cal. 476, the question here presented is fully discussed, and the conclusion now declared is in direct line with the views of the court as embodied in that decision.

There was no claim made at the trial that defendant was insane, but a great number of instructions—entirely too many under any conceivable state of facts—were asked by defendant to be given to the jury bearing upon the condition of defendant's mind, viewed in the light of the blow upon his head administered by the son of the deceased. There is some evidence that this blow was given by the son at the request of his father, and for that reason it may be conceded that the case as to this branch of it stands exactly as though the blow had been given by the deceased himself. For present purposes it may also be conceded that the blow was unjustified by the law. Upon close inspection we find these instructions differ more in form than in substance. They were refused, and, as illustrative of the general principle attempted to be covered by them, we cite the following:

"If you believe, gentlemen of the jury, from the evidence, that in the same combat in which the fatal shot was fired, or immediately prior thereto, the defendant received at the hands of the deceased, or his son acting by his direction, such injuries as produced in him a dazed condition of mind, impairing his reasoning faculties, judgment, and powers of perception, and that after receiving such injury the defendant in good faith abandoned such struggle and notified the deceased of his so doing, and thereafter the deceased followed the defendant and used toward him threatening and abusive language, and advanced upon him, and that at that time the defendant was in a dazed condition of mind, and his faculties, judgment, and powers of perception were impaired by reason of having

just before received such injury, and that he, the defendant, was not at that time capable of acting with deliberation, premeditation, and clearness, but was dazed and uncertain and apprehensive of mind by reason of said blow, and his condition resulting therefrom, under such state of facts—if you find the same to be the facts from the evidence in this case—you cannot find the defendant guilty of murder, but must find him not guilty of murder."

It is attempted by the aforesaid instructions, illustrated by the one quoted, to raise the novel proposition of law discussed at length in the case of *People v. Button*, 106 Cal. 628, 46 Am. St. Rep. 259; but in passing it might be well suggested that the principle discussed in that case may almost be said to be a new departure or a new principle in criminal law. The facts of the two cases are entirely different in this, that in the Button case the deceased had received the blow upon the head, while here the defendant received the blow. And if we should consider a second application of the principle upon a different state of facts, we would be groping to some extent in unknown seas. In the application of the principle contended for by defendant's counsel this variance in the facts of the two cases may not be material, and the principle of law may be equally invokable in both. Yet in the present case we will not enter into a discussion of that matter, for the record does not squarely present the question. This is apparent from the reasons hereinafter stated.

As an incidental objection to this class of instructions, we find in substantially all of them inherent defects, some of these defects appearing in one, others appearing in another. For example, in the instruction quoted a vital element is omitted, the presence of which element is absolutely necessary in order that the principle contended for might be presented. This defect is found in the fact that the unlawfulness of the blow inflicted by the deceased or his son upon defendant's head is a material element, yet the instruction makes no mention of it. If the blow was justified in law, then the fact that it was received at the hands of deceased or his son is wholly immaterial, and the case under such circumstances would stand exactly as though it were administered by a stranger. Conceding defendant was in a dazed condition of mind, if such condition was not caused by the unlawful act of the

deceased, then surely the defendant may not be held guiltless
of murder of the second degree, at least. Voluntary intoxi-
cation may prove such a condition of mind, yet a defendant
is not guiltless of crime for that reason. If this condition of
mind is not produced by the deceased, and does not amount to
insanity, then the defendant may not be acquitted of the crime
of murder for such reason.

Presumably in the exercise of extreme caution, the trial court
gave the jury the two following instructions, bearing generally
upon the proposition under discussion, and if instructions were
demanded they fairly and sufficiently cover the ground from de-
fendant's standpoint:

"If you believe from the evidence that at the time of the kill-
ing the defendant was in pain and suffering from a painful injury
inflicted upon his head a few minutes before by a blow received
from a heavy club sufficient to produce a dazed condition of mind,
and impairing the reasoning faculties, judgment, and powers of
perception of the defendant, then you should take such condi-
tion of the facts and circumstances into consideration in deter-
mining whether the defendant was guilty of murder or any
criminal offense at the time he fired the shot resulting in the
death of the deceased."

"No person can be found guilty of the crime of murder unless
he is at the time in such a condition of mind that he is able to act
with deliberation and premeditation, and, if you find from the
evidence that the defendant at the time of the killing was not
in such a condition of mind, you cannot find him, the defend-
ant, guilty of murder, but must acquit him of that offense."

Certainly, in view of the giving of the instructions just quoted,
the court was justified in declining to go to greater depths in
the matter of further instructions to the jury upon this ques-
tion of the condition of defendant's mind at the time of the kill-
ing. This is so for the additional reason that the evidence does
not justify it. While the doctors testified to the nature of the
wound upon defendant's head, and gave their opinions as to the
possible temporary results following to him in the nature of con-
cussion, et cetera, from such wound, yet defendant's own evidence
shows that he was in no such dazed condition of mind as is pic-
tured for him by the instructions refused. Let us look at his

mind in the light of his account of the killing, commencing at his arrival at the house. We quote: "I seen a man coming from the barn. I couldn't tell exactly who it was at that time. I knew it was one of the men coming after me, because I knew they had not done their work, and they had no other business at the house. So I rushed to the door and told Ben, the cook, to get me the gun. Ben came and got the gun for me as quick as he could, and I walked out on the porch, and Mr. Motley was coming then six or seven feet I suppose from the porch, and he says: 'Get off this ranch, you damned son of a bitch, or I will kill you.' I says: 'Stop, Motley, stop. I don't want any more trouble. I am hurt. I can't stand any more of this.' He says: 'Yes, damn you, if you don't get off this ranch I will kill you.' I told him to stop, and when I told him to stop the second time he says: 'You go, damn you. I will make you stop,' and he was right on the second step there, and I told him to stop again, and he kept coming right along, and I shot the first time, and says: 'Stop now.' He kept coming right along, and I shot again, and the last time I shot he says: 'Oh, you have shot me,' or 'You have killed me'—I don't recollect. He rushed on into the kitchen. That was the last I saw of him for a while, and I went over into the hall, and was trying to reload the gun. I asked the Jap to unbreech the gun for me. He took the gun, and gave it back to me, and said he could not unbreech it. When I saw Mr. Motley coming toward the house I looked at him and could see his left hand. I couldn't see his other hand. He had his right hand in his coat pocket, arm up like that. I looked as carefully as I could. I looked close. I couldn't see whether he had any weapon or not; but I supposed from his action and the way he was coming that he surely did have, or he wouldn't be coming at me in that manner. When I came out on the porch with the gun I supposed that the man certainly would stop if he didn't aim to kill me, and I intended to bluff him if I could and stop him. That was my intention. I supposed when I ordered him to stop, and he saw I had a gun, that he would stop. When I shot I believed that I had to, or that he would come right along and assault me. I supposed from his actions that he intended to do violence."

We are quite clear upon this state of the evidence the court was justified in refusing the instructions asked.

There is no merit in the exception taken to the rulings of the court upon the cross-examination of young Motley. As to that portion of the cross-examination tending to show who was the first aggressor, it is sufficient to say no deadly weapons were used by the deceased in the first altercation, and under such circumstances it is immaterial as to who in fact began it. As showing the bias, prejudice, and *animus* of the witness Motley, it may be suggested that he was a most active participant in the first fight, and also a son of the dead man. Under such circumstances, his *animus*, interest, and bias in giving his testimony was sufficiently established.

For the foregoing reasons the judgment and order are affirmed.

Van Fleet, J., and Harrison, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.