[Crim. No. 2406. In Bank.—September 19, 1922.]

THE PEOPLE, Respondent, v. WONG TOY, Appellant.

[1] CRIMINAL LAW—MOTION FOR CONTINUANCE—REMARKS OF COURT IN PRESENCE OF VENIREMEN—RIGHT TO COMPLAIN.—A defendant in a criminal case cannot complain of alleged prejudicial remarks of the trial judge in the presence of the veniremen in denying his motion for a continuance of the trial, where no objection was made, exception entered, error assigned or attention of the court or counsel called thereto, and the jurors present were not examined upon their *voir dire* with reference to the matter, and the court was not requested to call in other jurymen or to excuse the examined talesmen upon a peremptory challenge or for cause, although the defendant at the time of their acceptance had sufficient peremptory challenges to have disposed of them.

[2] ID.—MURDER—EVIDENCE—INTEREST OF WITNESS—EMPLOYMENT OF ONE OF ATTORNEYS. — In a prosecution for murder, it was not prejudicial error to refuse to permit a grandson of the deceased to answer the question on cross-examination as to whether he or his family were hiring one of the attorneys, where the relationship of the witness to the deceased, as already disclosed by the evidence, was sufficient to show his interest in the prosecution of the defendant.

[3] ID.—OWNERSHIP AND POSSESSION OF CARTRIDGES—CROSS-EXAMINATION OF DEFENDANT.—Where in a prosecution for murder, the defendant on direct examination denied that he had any cartridges at any time, it was proper to cross-examine him with reference to the ownership and possession of cartridges contained in the revolver which he testified was found in the same room with him immediately after the homicide.

[4] ID. — REVOLVER FOUND IN ROOM WITH DEFENDANT — RIGHT OF CROSS-EXAMINATION.—Where in a prosecution for murder, it was shown that three or more persons participated in the actual killing and that each fired shots from a revolver and that two revolvers of the same caliber as the bullets found in the body were found upon the premises where the crime was committed, the people had the right to cross-examine the defendant as to a revolver found in the room with him at the time he was apprehended upon the theory that it was one of those used in the murder, although it was of a different caliber.

[5] ID.—WHEREABOUTS AT TIME OF MURDER—IMPEACHMENT OF DEFENDANT.—Where in a prosecution for murder, the defendant on cross-examination gave the names of five persons as being present at a club when he returned there immediately before the murder,

it was proper to call his attention to an affidavit for a continuance in which he made oath that three different persons therein named were the only witnesses by which he could prove his presence at such club.

[6] ID.—MISCONDUCT OF DISTRICT ATTORNEY—IMPROPER QUESTION—ABSENCE OF OBJECTION—ORDER STRIKING OUT—LACK OF PREJUDICE.—Where an alleged improper question was asked by the district attorney on cross-examination of a witness, and the question was not objected to and a motion to strike out the question and answer was granted, no error or misconduct resulted.

[7] ID.—ASSIGNMENT OF MISCONDUCT—EFFECT OF FAILURE.—A defendant on appeal is not in a position to raise the question of misconduct of the district attorney in asking him certain questions on cross-examination, in the absence of an assignment of misconduct.

APPEAL from a judgment of the Superior Court of Fresno County. S. L. Strother, Judge. Affirmed.

The facts are stated in the opinion of the court.

Herbert McDowell, Harris & Hayhurst, M. K. Harris and Rue C. Gibson for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, B. W. Gearhart, Philip Conley and O. L. Everts for Respondent.

WILBUR, J.—The defendant was convicted of the murder of Fook Kee and sentenced to be hanged. Some of the facts in connection with the murder are stated in the opinion this day rendered in *People* v. *Lee Yick, post,* p. 599 [209 Pac. 538]. Several eye-witnesses testified to defendant's participation in the murder and the defendant does not claim that the evidence is insufficient to justify the verdict, but depends for a reversal upon the alleged misconduct of the judge and of the district attorney and upon certain errors in ruling upon the admissibility of evidence.

[1] It is claimed that on July 5th, when the defendant moved for a continuance of the trial of the case, the comments upon the affidavits presented in support of the motion for a continuance, made by the judge, in the presence of the veniremen, were most prejudicial to the rights of the

defendant. We will first consider this question. The affidavits offered by the defendant in support of the motion averred that there was a tong war in Fresno, the place of trial, between two Chinese tongs; that the Bing Kong tong had threatened to kill three members of the tong to which defendant's absent witnesses belonged, and that these witnesses, Mue Que, Ny Hong Jock and Chan Hoy, had fled in terror from Fresno, their place of residence, and that their whereabouts was unknown to the defendant and that they were the only witnesses by which the defendant could establish his alibi, and that a general order issued by the chief of police prevented their return until peace and quiet was restored. The district attorney filed counter-affidavits in which he also made certain allegations with reference to the tong war, stating in effect that this war between the two Chinese tongs began some five or six weeks before the murder of Fook Kee, and the whereabouts of such witnesses was known to the members of the Suey On tong, to which the defendant belonged. The judge, in commenting upon the affidavits, expressed a just indignation that the community should be upset by a war between Chinese tongs and expressed the belief that the members of defendant's tong could locate such witnesses, as was averred in defendant's affidavits. The defendant's principal complaint concerning the remarks by the judge is that he expressed a doubt as to the existence of the persons defendant claimed could establish his alibi. It is claimed that by this remark the judge discredited the veracity of the defendant and thus affected the subsequent trial wherein defendant testified in his own behalf. The judge also said that he believed that if the matter were put in the hands of responsible citizens they would put an end to the tong war. This remark was no doubt the result of allegations in the affidavits concerning an effort to effect a treaty of peace between the warring tongs. The defendant now intimates that the court was advocating mob law, but there is no justfication for this contention. It is evident that the attorneys for the defendant did not at any time regard the remarks of the judge as prejudicial to their client. No objection was made to the remarks of the judge; no exception was entered thereto or error assigned nor was the attention of the court or counsel called in any manner to the fact that the de-

fendant regarded the conduct of the judge as prejudicial. The judge stated that he regarded the matter of the tong war as absolutely irrelevant. The remarks of the judge were made in passing upon the matters averred in the affidavits presented on the motion and were in the main pertinent to the proper determination of that motion. Six of the jury panel present at the time the motion for a continuance was first presented were subsequently drawn and served upon the jury, and it is claimed that they must have carried into the jury-box prejudice resulting from the remarks of the judge in disposing of the motion which was granted. The record does not clearly show that these veniremen were present at the time the judge made the remarks complained of, but assuming that they were then present, they were not examined upon their *voir dire* with reference to the matter. The court was not requested to call in other jurymen or to excuse these jurymen upon a peremptory challenge or for cause, and no opportunity was given to the court or to the district attorney to correct the impression made upon the minds of the veniremen of which defendant now complains. The record also shows that at the time these six members of the original panel were accepted as jurors, the defendant had sufficient peremptory challenges to have disposed of them. Under the circumstances the defendant cannot complain of the remarks of the judge, and for that reason we refrain from further discussion thereof.

[2] Defendant complains that the court erred in sustaining an objection to his question upon the cross-examination of Wong Kim Gong. This witness was a grandson of the deceased, Fook Kee. He was living in the home of Fook Kee and was supported by him at the time of the murder. He was about 18 years of age and a witness to the murder of his grandfather. On cross-examination he was asked by the defendant's counsel, ''Is your family or yourself contributing or hiring Mr. Everts as attorney here?'' The district attorney objected to the question on the ground that it was immaterial and the objection was sustained. The interest of the witness in the controversy is always a proper subject of cross-examination. It would have been well if the court had allowed the question to be answered, but the relationship of the witness to the deceased, already

disclosed by the evidence, was sufficient to show his interest
in the prosecution of the defendant. The extent of the
cross-examination of witnesses as to their interest in the
controversy is very largely in the discretion of the trial
court and such interest is often made the excuse for lengthy
cross-examination upon wholly immaterial matter. There
was no prejudicial error in the refusal to permit the wit-
ness to answer the question.

[3] The defendant objects to the scope of the cross-
examination allowed by the court in the examination of the
defendant concerning the use, ownership and knowledge
of a 38-caliber revolver found in the room where the de-
fendant was arrested in the Suey On tong headquarters.
The defendant had testified that he was in the Suey On tong
headquarters at 1013 China Alley, diagonally across the
street from the scene of the murder at 1007 China Alley,
at the time of the firing of the shots which killed Fook
Kee; that he remained there until he was arrested, and that
he did not fire such shots or in any manner have anything
to do with the killing of Fook Kee. The evidence of the
prosecution was to the effect that the defendant had actu-
ally fired the shots that killed Fook Kee and for that pur-
pose had entered the premises where the murder was com-
mitted, making his escape after the killing of Fook Kee
and the wounding of a bystander. The defendant testified
that shortly before his arrest a police officer entered the
room where he was at the Suey On tong headquarters and
took from the drawer of a desk in that room a 38-caliber
revolver; that this revolver was loaded and that six car-
tridges were removed therefrom by the police officer, but
when the officer returned with other officers to arrest the
defendant, the cartridges were replaced in the revolver.
The defendant was questioned on his direct examination as
follows:

"Q. It has been testified here by one of the officers that
he found nine cartridges in one of the rooms there, one of
the sleeping-rooms back of the office. Did you have *any
cartridges* or do you know anything about *those cartridges*
whatever? A. I do not know." (Italics ours.)

Having denied any connection with the murder or with
the weapon or ammunition with which it was committed,
and having testified that he was not at the scene of the

killing, the district attorney on cross-examination sought to show that the defendant had been in the habit of carrying the 38-caliber revolver in question and that it belonged to him. To this line of questions defendant objected. The defendant was asked on cross-examination as follows:

"Q. You told us about a gun that was found by the man that you term the fat sergeant. Was that gun found in your room, in the drawer in your room? A. That is not my room, I live upstairs."

Thereupon the district attorney read a statement purporting to have been made by the defendant in the presence of certain named witnesses. The general purport of the alleged answers indicated that the defendant took the revolver in question out of the drawer and gave it to the officer; that it was a 38-caliber long and that there were six cartridges therein and that the drawer from which the revolver was taken was in the desk in the defendant's room. The questions and answers so read and defendant's testimony in relation thereto were stricken out by the court and the jury instructed to disregard them. The defendant was then asked the following question:

"Q. Now, you testified to them finding—Sergeant Ben finding a pistol over there, was that your pistol?"

This was objected to as incompetent, irrelevant and immaterial and not proper cross-examination. The objection being overruled, the witness answered: "The gun isn't mine. I don't know who it belongs to."

Further statements purporting to have been made at the time and place above referred to were read to the witness, wherein the defendant stated that he carried the 38-caliber revolver when he was on duty in order to defend the members of his tong. Objection to this line of questions was sustained, the matter read stricken out, and the jury instructed to disregard it. Thereupon the witness was questioned as follows: "Did you ever carry or handle or have in your possession this particular pistol that the fat sergeant found over there?" Objection to this question was overruled and the witness answered, "No, sir." Thereupon the district attorney again reverted to the transcript of the statement made by the defendant, above referred to, as follows:

" 'Q. Where did you get that pistol? A. I carried it when I go on duty. Q. What do you mean by duty? A. They were afraid that others might come and shoot them."

"Q. Were those questions asked you and did you give those answers at the time and place?"

This was objected to as "irrelevant, incompetent and immaterial and not cross-examination, it is not tending to impeach the witness and upon all of the other grounds to the questions that were asked from that record." The court overruled this objection and the witness answered, "The questions were asked me, but that wasn't the way I answered them." In view of the fact that the witness had testified that he did not have any cartridges at any time, it was proper to cross-examine with reference to the ownership and possession of cartridges contained in the revolver which he testified was found in the same room with him immediately after the murder. It was also proper to cross-examine him concerning the revolver found in his immediate presence so soon after the murder, in view of his denial of guilt.

[4] It is claimed, however, that to allow the witness to be impeached, as he was, by his statements upon the question of his ownership of this gun, was to permit his impeachment upon a collateral matter, and that this was prejudicially erroneous. In the consideration of this claim, a further statement of the facts connected with the murder should be made. Three or more men participated in the actual killing. Each fired shots from a revolver. The bullets found in the body of the deceased were all 32–20 caliber, one of them being a lead bullet, the others steel jacketed. Two Smith and Wesson revolvers of this caliber were found upon the premises where the murder was committed, evidently discarded by the murderers. The people had a right to cross-examine the defendant upon the theory that the revolver found in the room with him at the time he was apprehended was one of those used in the murder, and the fact that such inquiry might have been fruitless or unfavorable to the people because the caliber of the bullets found in the body was 32 instead of 38, did not make the cross-examination improper or the matter inquired about collateral. If we assume, as the prosecution had a right to do, that this revolver was used in the murder, the rele-

vancy of the cross-examination is clear and the impeaching evidence proper. (See *People* v. *Nakis*, 184 Cal. 105, 114 [193 Pac. 92].)

[5] On his cross-examination the defendant was asked to state who was present at the Suey On tong club when he returned from the side of Lee Nam, a Suey On tong man who had been stabbed immediately before the murder of Fook Kee, a Bing Kong man. He replied Leong Chang Hoy, Joy Yee Jick, Ng Hung Jick, Lung Ho and Mew Kew. In view of this evidence the defendant's attention was called to his above-mentioned affidavit for a continuance, in which he made oath that Mue Que, Ny Hong Jock and Chan Hoy were the only witnesses by which he could prove that he was at the club room at 1013 China Alley at the time of the murder, and he was asked why he stated in the affidavit that only by the witnesses named therein could he prove an alibi at the time of the murder. This was proper cross-examination upon the question of the whereabouts of the defendant at the time of the murder. We find no prejudicial error committed in the reception of evidence.

[6] The defendant also complains of misconduct of the district attorney in the examination of the witnesses. The first matter thus presented occurred in the cross-examination of the witness Reinhart. The question was not objected to and a motion made to strike out the question and answer was granted. There being no objection to the question, the question and answer having been stricken out, no error or misconduct resulted. A witness named Coggshall was asked on cross-examination if he was not known by his friends by the nickname of Cocky. No objection being interposed he answered, "Yes." The answer was followed by an objection and an assignment of error. It is claimed this question constituted misconduct on the part of the district attorney. There is nothing in this point and the assignment of error was too late.

[7] It is claimed that the district attorney was guilty of misconduct in asking the defendant on his cross-examination if he had acted as guardsman for the Suey On tong society for some weeks previous to the shooting, and if he had said to Lee Yick, his codefendant, "Don't talk too much, you will let the cat out of the bag." It is a suffi-

cient answer to this claim of misconduct to say that in view of the people's claim that Lee Yick and the defendant were co-conspirators and that the killing was committed by Wong Toy in his official capacity as an agent of the Suey On tong society, in obedience to the orders of Lee Yick, the defendant's objection to these questions might well have been overruled. In any event there was no misconduct by the district attorney in asking these questions. Moreover, the defendant did not assign the conduct of the district attorney in asking these questions as error and consequently is not now in a position to raise the question of misconduct. (*People* v. *Babcock*, 160 Cal. 537, 545 [117 Pac. 549] ; *People* v. *Nakis*, 184 Cal. 105 [193 Pac. 92].) This disposes of all the errors complained of by the defendant.

Judgment affirmed.

Waste, J., Shaw, C. J., Shurtleff, J., Lawlor, J., and Lennon, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on October 19, 1922:

THE COURT.—The petition for rehearing is denied. When James Gearhart, the reporter, was offered as a witness to prove the declarations made in the Chinese language, such objection was sustained. It is apparent from the record that the district attorney and the court were of the opinion that this objection to the admissibility of the testimony of the reporter would be cured by the evidence of the interpreter, who translated the declarations of the defendant, to the effect that he correctly translated the questions and answers. The interpreter so testified and thereupon the evidence of the reporter was again offered. The defendant made a very general objection thereto and did not repeat the objection theretofore made that the reporter did not understand the language in which the declarations were made. The court requested the defendant to more specifically point out his objection to the evidence, but this he declined to do. It is apparent from the record that the court and the prosecuting attorney were of the opinion that the objection theretofore made had been

cured and not having been specifically renewed, the general objection was insufficient under the circumstances to call their attention to the fact that the evidence of the interpreter was insufficient as a foundation for the testimony of the reporter to the declarations of the defendant.

Wilbur, acting C. J., Lawlor, J., Lennon, J., and Richards, J., *pro tem.*, concurred.