[Crim. No. 1528. Second Appellate District, Division Two.—November 25, 1927.]

THE PEOPLE, Respondent, v. FRANKLIN A. MURRAY, Appellant.

Raymond E. Hodge and A. S. Maloney for Appellant.

U. S. Webb, Attorney-General, and Charles A. Wetmore, Deputy Attorney-General, for Respondent.

WORKS, P. J.—Defendant was convicted of the crime of obtaining property by false pretenses. He appeals from the judgment of conviction and from an order of the trial court denying his motion for a new trial.

█ Pursuant to the preliminary examination, which resulted in the filing of information against appellant, the committing magistrate held him to answer on a charge of procuring money under false pretenses. The information which was filed thereafter charged him with that offense and with two others, the pleading consisting of three counts. At the trial, under a claim that they had first been informed of the contents of the information immediately before the hearing commenced, the counsel for appellant asked leave to withdraw a plea of not guilty, which had theretofore been entered, for the purpose of moving to set aside the information. The request was refused and it is contended that the court abused its discretion in not granting it. The courts of review of the state have decided in many cases, among which is *People* v. *Nogiri,* 142 Cal. 596 [76 Pac. 490], that a district attorney has no power to file an information charging an offense different from that for which a defendant is held to answer by a committing magistrate. Without deciding whether the present case is within the rule thus declared, or whether the request of appellant for leave to withdraw his plea came too late, we think the refusal of the trial court to grant the request was proper. As stated by counsel to the court, appellant desired an opportunity to "move to set aside this information entirely on the ground" stated in the decisions to which we have referred. It was said at another time that a withdrawal of the plea was desired "for the purpose of making a motion to set aside the information" on that ground. It will be observed that appellant indicated no desire to move to set aside the counts of the information other than the false pretenses count, which latter was in accord with the order of the magistrate. In a case in which, under circumstances similar to those here presented, a motion was actually made to set

aside an entire information the court said: "To be effective the motion should, in our judgment, have been directed to the second count alone, and not to the entire information" (*People* v. *Danford*, 14 Cal. App. 442 [112 Pac. 474]), the second count being the one that pleaded a charge upon which defendant had not been held by the committing magistrate. In a later case of the same nature it was contended that under the provisions of the code a motion to set aside less than an entire information would not lie, and the court said in disposing of the point: "We find no valid reason why an order to set aside a separate count of the information may not be made" (*People* v. *Hudson*, 35 Cal. App. 234 [169 Pac. 719]).

As the motion suggested by appellant here could not have been granted, it would have been idle for the trial court to grant leave to withdraw the plea. It was therefore proper for the court to refuse the leave (*People* v. *Staples*, 149 Cal. 405 [86 Pac. 886]).

██ It is provided by section 1110 of the Penal Code that under such a charge as that of which appellant was found guilty here "the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing . . . or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances." In the present instance the false pretenses were proven by the testimony of but one witness, and appellant contends that neither the corroborating circumstances nor the giving of the false token mentioned in the statute was shown by the prosecution.

The property which appellant was charged with procuring was acquired by him under false pretenses as to the assets and financial worth and standing of a certain corporation, his representations being made for the purpose of inducing the complaining witness, a woman, to purchase shares of the capital stock of the organization. At the time of the making of the misrepresentations he gave to her an envelope with a list of names written upon it. One of these names was that of A. E. Hanna. The complaining witness testified that at the time the list was passed to her by appellant he told her that Hanna was a stockholder in the company, that he was a retired surgeon and that he made

his headquarters at a certain club in Los Angeles. At the trial Dr. E. A. Hanna—the difference in the initials is to be observed—was called as a witness by the prosecution. He testified that he was a physician, that he resided at the club above mentioned and had lived there for three years, that he had heard of the corporation concerning which appellant made the false representations to the complaining witness, but that he had never been a stockholder of it.

The difference between the name upon the list given the complaining witness by appellant and the name of the witness called by the prosecution—a difference between A. E. and E. A.—might possibly give us concern in a solution of the question now about to be determined, if it were not for the testimony of the appellant himself. He said, in response to a question whether he represented to the complaining witness that E. A. Hanna—the name of the witness called by the prosecution—was a stockholder in the corporation: ''I didn't tell her that E. A. Hanna was a stockholder in our company. I told her that there was an E. A. Hanna that had bought some stock in our company.''

It is contended by respondent that the testimony of Dr. Hanna tended to show that the envelope upon which was written the name A. E. Hanna, among others, was a false token as that term is employed in the statute. We doubt, although it is unnecessary for us to decide, whether the envelope was susceptible of that designation, for there was nothing on it with which the testimony of Dr. Hanna was at variance. He merely disputed something that appellant had said, according to the complaining witness, about the person whose name was on the envelope, granting that A. E. Hanna and E. A. Hanna were the same, a fact which the jury justly might have inferred from the testimony of the complaining witness and of appellant, taken together. We do think, however, that the envelope, the testimony of the complaining witness, of Dr. Hanna and of appellant, all considered together, show sufficiently a corroborating circumstance within the statute. ''The corroborating circumstances required by the rule, may be proved by circumstantial evidence; and the entire conduct of the defendant and declarations made by him may be looked to to furnish the corroborative evidence contemplated by law'' (12 Cal. Jur. 475, sec. 23, and cases cited. See, also, cases cited,

Cal. Jur. Supp. 1926, p. 803). The corroborating circumstances here shown were slight, but we think they were sufficient to satisfy the statute.

On the cross-examination of the complaining witness it was sought to elicit from her answers showing that she had commenced a civil action against appellant for the purpose of recovering the property of which he had defrauded her. The questions put to her were asked in order to show her hostility to appellant and thus to affect her credibility as a witness. Upon objection the questions were ruled out. The testimony of the complaining witness tended to show that she had claims against appellant upon which she might have maintained a civil action, and we think the mere fact that she had commenced such an action would have added nothing, for the purpose of showing her bias, to the fact that such a claim existed and to the further fact that she was at the time actually testifying in a criminal case against appellant, as the complaining witness, concerning the identical transactions out of which the claim arose. In our view there was no error in the rulings.

It was charged in the information that appellant represented to the complaining witness that the shares of stock which he induced her to take were worth a certain sum of money, but it was alleged that they were not worth that sum and that they were in fact valueless. It is contended by appellant that the prosecution produced no evidence tending to show the value of the shares at the time the representations were made, but we think the contention cannot be upheld. Appellant's story about the stock of the corporation, told to the complaining witness, was most glowing. According to her, he said, among other things, that during the calendar year preceding the one in which he made his misrepresentations the corporation had paid to its stockholders dividends aggregating forty-two per cent. In contrast to these attractive tales it was shown at the trial that an individual who had installed an electric motor for the concern, at about the time appellant made his representations to the complaining witness, had been compelled to take a promissory note for the motor and that he had been unable to collect it. The amount of the note was but $150, and the holder had been able to realize but $47 upon it, the amount having been paid by appellant. A

motion to strike the testimony of the witness who covered these events was made, but it was not granted as to these particular matters, although granted in part. Another witness testified that during a period commencing three months before appellant's misrepresentations were made and ending apparently after they were made the plant of the corporation was never "commercially operated." Yet another witness, who became secretary of the corporation less than two months after the misrepresentations were made and continued in the office for a period of four months, or until three weeks before the trial of appellant commenced, testified that he never knew that the corporation had any books, that he never saw any. He had been subpoenaed to bring all the books of the concern into court, and when asked why he had not complied with the mandate his only answer was: "I never had any books to bring." We think all this testimony was sufficient to show to the jury that the stock was worth much less than the amount stated in the information.

█ Other points are made by appellant, but they are not argued and we are therefore not required to decide them. It is contended that the district attorney was guilty of misconduct during the trial, but the point is so obviously without merit that we think it unworthy of further consideration.

Judgment and order affirmed.

Craig, J., and Thompson, J., concurred.