[Crim. No. 433. Fourth Appellate District.—July 6, 1938.]

## THE PEOPLE, Respondent, v. LEO TERKANIAN, Appellant.

R. E. Parsons and Wm. M. Anderson for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

MARKS, J.—Defendant was charged with the crime of assuming and attempting to act and acting, without a license, as a "dealer" as defined in subdivision "f" of section 1261 of the Agricultural Code. He was found guilty and sentenced to serve six months in the county jail. He has appealed from the judgment.

Defendant urges three grounds for reversal: (1) That the evidence is not sufficient to support the verdict and judgment; (2) alleged error in sustaining an objection of the district attorney to a question asked by counsel for defendant on cross-examination of L. O. Whitmer, the complaining witness; (3) that subdivision "f" of section 1261 of the Agricultural Code is unconstitutional.

In our statement of facts we will confine ourselves to a summary of those facts supporting the judgment. Many of these facts were denied by defendant. The jury accepted those which we will detail as true and disbelieved the testimony of defendant. As we cannot reverse a judgment merely because of conflicts in the evidence, we will disregard such conflicts here.

L. O. Whitmer was a grapefruit grower in Imperial County. Among others, he had two groves, one of fifty-five acres and another of ten acres. His crops had been badly damaged by frost in 1937.

In March, 1937, defendant purchased the crop on the fifty-five acre grove for $6.50 per ton on the trees. By mutual agreement the contract was changed to a stated purchase price of $400. Defendant picked and removed this crop and paid $350 on account of the purchase price. The balance of $50 remains unpaid.

Shortly after the first contract was made defendant purchased the fruit on the ten acre grove for $6.50 per ton. He picked and removed the fruit and has paid nothing for it.

Defendant was not licensed under the provisions of division six, chapter six of the Agricultural Code. Section 1263 of that code prohibits any person from acting as a dealer without first obtaining a license from the director of agriculture. Section 1273 provides the penalty for persons who assume or attempt to act as dealers without first obtaining licenses.

Subdivision "f" of section 1261 of the Agricultural Code thus defines a dealer:

"(f) *Dealer*. The term 'dealer' means any person other than a commission merchant who contracts for or obtains from the producer thereof possession or control of any farm product, except by payment to the producer, at the time of obtaining such possession or control, of the full agreed price of such commodity in lawful money of the United States; provided, that any person licensed as a slaughterer under the provisions of Article 3 of Chapter 1 of Division III of this code shall not be required to obtain a license as a dealer under this chapter, and provided that the term 'dealer' as herein defined shall not include retail merchants having a fixed or established place of business in this State."

■ Defendant bases his attack on the sufficiency of the evidence to support the judgment on two grounds: First, that he paid cash for the grapefruit before he obtained possession of it, and, second, that it was proved that he had a fixed place of business and that the evidence failed to show that this fixed place of business was not the place of business of a retail merchant.

The evidence we have summarized disposes of the first contention. It shows that he took possession of the two lots of grapefruit and that there remains unpaid fifty dollars on the purchase price of the fruit from the fifty-five acre orchard, and all of the purchase price of that taken from the ten acre orchard. He therefore, had not paid the full purchase price of the fruit at the time he obtained possession of it as required by the statute.

The evidence shows that defendant was having the grapefruit prepared for market in a packing house in Los Angeles. He testified that he did not own this packing house. A citrus packing house is a place where citrus fruits are packed and otherwise prepared for market and from which they are sold. It is common knowledge in the citrus districts that these packing houses sell wholesale and distribute citrus fruits to dealers and in no manner resemble the places of business of "retail merchants."

■ On cross-examination of L. O. Whitmer, counsel for defendant asked him if he had instituted a civil action against defendant to collect the balance due for the grapefruit. An objection to this question was sustained which ruling is assigned as error. A similar question was before the court

in *People* v. *Murray*, 87 Cal. App. 145 [261 Pac. 740], where a similar ruling was made. It was there held that there was no prejudicial error in the ruling.

 Lastly, defendant asserts that subdivision ''f'' of section 1261 of the Agricultural Code is unconstitutional because there would come within its prohibition a single purchase of a farm product made by a tourist at a roadside stand when the purchase price was not immediately paid in lawful money of the United States.

We do not so construe the statute. It is fundamental that we should give effect to a reasonable interpretation of the language of a statute. In so doing we must consider and give effect to all of the enactment under attack and construe it according to the generally accepted and commonly understood meaning of the words used, unless it appears that the legislature intended to place upon them a special significance.

The use of the word ''dealer'', of itself, negatives this contention of defendant. It has a well defined and commonly understood meaning. In *In re Hemming*, 51 Fed. (2d) 850, it is said:

''The words 'dealer' and 'trader' are synonyms. 'A dealer is one whose business it is to buy and sell as a merchant, shopkeeper, or broker—a trader. Century Dictionary. A trader is one who makes it his business to buy merchandise, goods, or chattels to sell the same at a profit. Bouvier, Law Dictionary.' *State* v. *Rosenbaum*, 80 Conn. 327 [68 Atl. 250, 251, 15 L. R. A. (N. S.) 288, 125 Am. St. Rep. 121]. 'A dealer, in the popular, and therefore, in the statutory, sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again.' *Norris Brothers* v. *Commonwealth*, 27 Pa. 494. 'Dealers are the middlemen between the manufacturer or producer and the consumer.' *Commonwealth* v. *Campbell*, 33 Pa. 380; *Commonwealth* v. *Vetterlein*, 214 Pa. 21 [63 Atl. 192, 193].''

The legislature was defining the word ''dealer'' which in itself implies one engaged in the *business* of buying and selling. In using that word as the one to be defined, the definition in the statute relates to the activities of one engaged in such *business* to the exclusion of another not engaged in such *business*. This would exclude from the effect of the section

a person making a single or casual purchase of a farm product not in the usual course of the business of the purchaser.

Judgment affirmed.

Barnard, P. J., and Haines, J., *pro. tem.,* concurred.