[Crim. No. 7783.   Second Dist., Div. Two.   Mar. 29, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. AUBREY
PHILPOTT, Defendant and Appellant.

Ramsey & Emlien, Albert C. Ramsey and Milton Emlien for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Matthew M. Kearney, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Appellant was charged with violating section 23101 of the Vehicle Code of California. The information alleged that on December 14, 1960, he operated a motor vehicle while under the influence of intoxicating liquor, and in an unlawful manner, proximately causing bodily injury to one Tom Leon Greenwood. It was alleged that he previously had been convicted of violating section 503, Vehicle Code of grand theft, felonies. Appellant pleaded not guilty and denied the prior convictions. Before the jury was impaneled, however, he admitted the two prior felony convictions.

The jury returned a verdict of guilty. Appellant's motion for a new trial was denied, but he was allowed to withdraw his admission of the conviction of violation of section 503, Vehicle Code. After a nonjury trial, it was found that the allegation as to this prior conviction was untrue. Proceedings were suspended, and appellant was placed on five years probation on condition that he spend the first year in jail. He filed a notice of appeal from the order denying his motion for a new trial, from the order granting probation,[1] and from the judgment of conviction.

A rather comprehensive review of the evidence appears essential in this case in order properly to determine, first, whether there is any substantial basis for any of appellant's assignments of error, and, secondly, whether any of the claimed errors could be regarded as prejudicial in the light of the entire record.

On December 14, 1960, at approximately 9 a. m., appellant and Tom L. Greenwood were involved in a traffic accident at the intersection of Avalon and Lomita Boulevards in the County of Los Angeles. Traffic at that intersection was controlled by automatic three-phase electric signals located on all four corners and by overhanging tri-colored signals which provided control for traffic approaching from all four directions.

Mr. Greenwood was driving alone in his Ford automobile, northbound on Avalon and when he was about 20 yards south of the intersection he observed that the light was green for northbound traffic. He approached the intersection at a

---

[1] See Penal Code section 1237, subdivision 1.

speed of between 20 and 30 miles per hour, and when he entered the intersection the light was still green for northbound traffic.

As he entered the intersection, Greenwood observed appellant's Cadillac headed in an easterly direction. The Cadillac was about 3 yards distant from Greenwood when Greenwood first noticed it. He observed that the traffic light for eastbound traffic was red immediately prior to the impact. The front of the Cadillac struck the driver's door of Greenwood's Ford. Greenwood was rendered unconscious and sustained rather serious injuries which we shall describe later.

Immediately prior to the accident, witness Robert Nelson was driving northbound on Avalon about 50 feet behind Greenwood's car. Greenwood approached and entered the intersection with the green light in his favor at a speed estimated by Nelson to have been between 15 and 25 miles per hour.

Nelson observed appellant's eastbound Cadillac when it was between 50 and 75 feet from the intersection traveling at a speed which he estimated to have been between 50 and 55 miles per hour. The Cadillac entered the intersection against the signal. When the Ford was struck, it went up in the air 15 or 20 feet and spun around. Greenwood was thrown to the pavement where he lay unconscious.

Five witnesses, including three police officers, who were in close contact with appellant immediately after the accident testified unanimously to their definite and unqualified opinions that appellant was intoxicated. Their opinions were based upon observations that his breath carried a strong odor of alcohol; that he staggered when he walked; that his face was flushed; that he generally failed to respond when spoken to, but when he did speak "his speech was thick and slurred, his tongue was thick"; that his eyes were bloodshot and watery; that he drooled and slobbered on himself and appeared to lack self-control.

There was a six-pack carton of beer behind the driver's seat of his car from which one can was missing. One of the investigating officers asked appellant how much he had had to drink before the accident and he replied, "Two beers." The officer then told appellant that it would be to his advantage to take the intoximeter test, but appellant declined to do so. While at the scene of the accident, after entering the police car, appellant got out and "took a swing" at one of the officers.

Appellant testified in his own behalf; we shall recite the substance of that testimony. He was 35 years old, divorced, and by occupation a bartender and merchant seaman. The night before the accident he had worked as a bartender until about 2:30 a. m. He had gotten about four and one-half hours sleep that night, having gone to bed at about 3 a. m. and having arisen at about 7:30 a. m. the morning of the accident. He admitted that he had been served six or seven alcoholic drinks during the night before the accident, and before he closed the bar at 2:30 a. m., but said that he didn't drink all of them.

Appellant testified that he had no breakfast on the morning of the accident, but that he started drinking at about 8 a. m. He told two of the officers that he had had a scotch and soda and three beers. He left his home at about 9 a. m. and drove directly to the scene of the accident, a distance of about one mile. He said that he drove easterly on Lomita Boulevard and entered the Avalon Boulevard intersection at a speed of 30 or 35 miles per hour, the light for his lane of traffic being amber. Greenwood's Ford was about 20 or 25 feet away when he first saw it. He formed no opinion concerning the speed of the Ford. After that he did not remember anything.

In the accident he received a fractured left ankle and a cut on his right leg. A front tooth was knocked out. He said that he did not feel any effects from the alcoholic drinks which he had consumed that morning and the night preceding. When asked concerning the felonies of which he had been convicted, he answered, ''grand theft auto and theft.''

Appellant called Doctor Bernard J. Korn, a doctor of medicine, as a defense witness. Dr. Korn examined appellant at the San Pedro Receiving Hospital at 11 a. m. on the day of the accident. His records made at the time of the examination and his recollection thereof did not indicate that appellant showed any symptoms of being under shock at the time of the examination. Dr. Korn stated, however, that his record indicated that appellant had been drinking and that the question as to whether or not he was drunk was a secondary thing which was not a consideration of his at that time.

It is appellant's first contention that the trial court erred in sustaining objections to questions propounded by him in his cross-examination of the People's witness, Greenwood, by which he sought to prove (1) that Greenwood had filed a civil action against him, and (2) that at the trial Greenwood had changed his testimony after discussing with the attorney rep-

resenting him in the civil action the testimony which he had given at the preliminary hearing.

The trial court sustained the prosecutor's objection to the following question which appellant propounded to Greenwood: "You are suing this defendant for a hundred thousand dollars or a little more; is that correct, sir?"

■■■ It is, of course, an elementary rule that the financial interest of a witness in the result of a case in which he testifies is a proper subject of cross-examination as tending to show his bias and affecting his credibility. (*People* v. *Wong Toy*, 189 Cal. 587, 590 [209 P. 543]; 54 Cal.Jur.2d, § 137, p. 529.) ■■■ However, it is the settled rule that the extent of the cross-examination of a witness as to his interest in the case rests in the sound discretion of the trial court. (*People* v. *Wong Toy, supra*, 189 Cal. 587, 590.) The majority rule in this country appears to permit cross-examination of a prosecuting witness in a criminal action as to his pending or contemplated civil action against the accused for damages arising out of the same transaction. (See Annot. 21 A.L.R.2d 1078.)

However, the California courts have frequently held that where the interest, bias and prejudice of a witness are clearly evident to the jury from the facts already proven, it is not prejudicial error to refuse to allow further cross-examination along these lines. (*People* v. *Worthington*, 122 Cal. 583, 589 [55 P. 396]; *People* v. *Murray*, 87 Cal.App. 145, 150 [261 P. 740]; *People* v. *Terkanian*, 27 Cal.App.2d 460 [81 P.2d 251]; *People* v. *Petters*, 29 Cal.App.2d 48, 51 [84 P.2d 54].)

*People* v. *Murray, supra*, at page 150, states: "On the cross-examination of the complaining witness it was sought to elicit from her answers showing that she had commenced a civil action against appellant for the purpose of recovering the property of which he had defrauded her. The questions put to her were asked in order to show her hostility to appellant and thus to affect her credibility as a witness. Upon objection the questions were ruled out. The testimony of the complaining witness tended to show that she had claims against appellant upon which she might have maintained a civil action, and we think the mere fact that she had commenced such an action would have added nothing, for the purpose of showing her bias, to the fact that such a claim existed and to the further fact that she was at the time actually testifying in a criminal case against appellant, as the complaining witness, concerning the identical transactions out of which the claim arose. In our view there was no error in the rulings."

In the case at bar Greenwood testified at length concerning the collision between his car and that of the defendant. He testified in effect that the collision resulted from appellant's unlawful disregard of the automatic traffic signal, that is, his driving into the intersection against the red signal. He had testified in detail concerning the several injuries which he had sustained, including head injuries, lacerations of the skin, internal bleeding and a cut on the forehead requiring 13 stitches. He testified that he had been hospitalized for 10 days and had remained under medical care for some time thereafter. Other prosecution witnesses, as we have earlier indicated, testified to their opinions that appellant was intoxicated. For the reasons stated in the several decisions above cited and quoted, we conclude that there was no prejudicial error in the ruling under discussion.

Appellant next complains of the ruling which sustained the People's objection to the following question propounded by appellant during his cross-examination of the People's witness Greenwood: "Isn't it true, sir, that someone pointed out to you that the transcript of the preliminary examination showed that you were not sixty feet back when you first observed the green signal, but you were, according to the preliminary testimony, somewhere within fifteen feet of the intersection?"

We find no substantial basis for appellant's claim of prejudicial error in this ruling. The testimony of the witness given at the preliminary hearing was read at the trial for any impeaching effect it may have had. It is arguable that there was no essential inconsistency in the testimony. In any event, any discrepancy in the testimony of the witness concerning his distance from the intersection when he first observed the green light was available as a subject of argument to the jury. The witness was completely consistent in testifying that he entered the intersection with the green light in his favor.

Finally, appellant contends that the trial court erred in failing to give the standard instructions on circumstantial evidence since the numerous witnesses who had expressed their opinions that he was drunk or intoxicated had based their opinions on their observations of his behavior, his physical appearance and the odor of alcohol on his breath, that is to say, on circumstantial evidence. The trial court, of course, did give appellant's requested instructions with respect to the presumption of innocence and the requirements of proof of guilt beyond a reasonable doubt.

The decisive question here presented is whether, in view of the entire record, the failure of the trial court to give the instructions on circumstantial evidence constituted prejudicial error. We have concluded that this question must be answered in the negative for several reasons. The only issue upon which appellant asserts that the prosecution relied upon circumstantial evidence was whether or not appellant was under the influence of intoxicating liquor at the time of the accident.

In the first place, assuming for the purpose of the present discussion that there was error in the court's failure to give the instructions on circumstantial evidence, such error was not prejudicial. ■ Where the evidence of guilt is so overwhelming that the jury could not reasonably have reached any other result, it frequently has been held that failure to give instructions on circumstantial evidence does not constitute prejudicial error. (*People* v. *Wright,* 199 Cal.App.2d 30, 41 [18 Cal.Rptr. 243]; *People* v. *Moore,* 196 Cal.App. 2d 91, 98 [16 Cal.Rptr. 294]; *People* v. *Marquez,* 192 Cal. App.2d 431, 435 [13 Cal.Rptr. 282]; *People* v. *Romero,* 156 Cal.App.2d 48, 50 [318 P.2d 835]; *People* v. *Candiotto,* 128 Cal.App.2d 347, 357-358 [275 P.2d 500].)

In the case at bar, the evidence that appellant was intoxicated was indeed overwhelming. The combined testimony of the several witnesses and the unanimity and firmness of their expressed opinions that appellant was drunk or intoxicated constituted an exceptionally strong case. But appellant's own testimony and his admissions as to the amount of alcohol that he had consumed within a few hours and immediately preceding the accident we think inevitably would lead any reasonable mind to the conclusion that he must have been under the influence of alcohol at the time of the accident. The contradictions in his testimony as to the number of drinks he had consumed are not without significance.

■ ''[T]he standard instructions on circumstantial evidence are not applicable to evidence of extrajudicial admissions.'' (*People* v. *Gould,* 54 Cal.2d 621, 629 [7 Cal.Rptr. 273, 354 P.2d 865]; *People* v. *Moore,* 196 Cal.App.2d 91, 98 [16 Cal.Rptr. 294].) ■ In addition, to justify a reversal not only must a trial court have erred in failing to give the subject instructions, but this error must have prejudiced the appellant's case. (See *People* v. *Moore, supra,* p. 98, and decisions there cited.)

Finally, there was such an abundance of direct evidence of appellant's intoxication and the effect of his admissions was such that the circumstantial evidence of his intoxication properly may be regarded as merely corroborative. The rule is well settled that if the circumstantial evidence in the case is merely incidental or corroborative, the instructions in question need not be given. (*People* v. *Moore, supra,* 196 Cal.App.2d 91, 98; *People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805]; *People* v. *Lapara,* 181 Cal. 66, 70 [183 P. 545]; *People* v. *Bernal,* 174 Cal.App.2d 777, 783 [345 P.2d 140]; *People* v. *Barkoff,* 163 Cal.App.2d 639, 644 [329 P.2d 1005].)

In summary, it is our conclusion that the errors asserted by appellant herein were not prejudicial under the provisions of article VI, section 4½, of the California Constitution.

The judgment and the orders presented for review are affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 23, 1962.