[Crim. No. 1895. Third Dist. June 29, 1945.]

THE PEOPLE, Respondent, v. LEONARD A. YOUNG, Appellant.

Manwell & Manwell for Appellant.

Robert W. Kenny, Attorney General, James O. Reavis, Deputy Attorney General, and Richard H. Fuidge, District Attorney, for Respondent.

PEEK, J.—This is an appeal by defendant from a judgment of conviction of the crime of manslaughter, and from an order of the trial court denying his motion for a new trial.

The testimony discloses that defendant and the deceased, Snow, had been employed for a number of years by the Di Giorgi Fruit Corporation, and at the time of the fatal shooting were working out of the corporation's field office located at the New England Orchard, south of the city of Marysville. Defendant's wife was also an employee of the corporation and worked at the same office. The three had been friendly for some time and were in the habit of frequenting places of amusement together. However, after the deceased was assigned to work in the New England Orchard Company's office, the relationship between the parties became strained. According to the defendant's testimony his wife's attitude toward him became cool and aloof, and for several months prior to the shooting they had not lived together as man and wife. Approximately a month prior to the homicide he found a note in his wife's purse directed to Snow, which manifested intimacies between them. Shortly thereafter he discovered his wife was pregnant. When he confronted her with this fact and named Snow she admitted her relationship with him. That same evening he talked to Snow concerning his wife's condition. Snow denied he was involved and according to defendant told him that if he ever said anything more about it he would "beat Hell out of me." Young made various propositions to his wife relative to their marital affairs, including that of the resumption of their marriage subject to the adoption of the child, but his wife refused to accept any of his proposals. He then instituted an action for divorce. A second note, between his wife and Snow, which intimated that things were not satisfactory between her and Snow, was intercepted by defendant. He further testified that his wife pleaded with him not to sell their home as he had planned, for the reason she had no place to go nor was there any one to take care of her during her confinement. Again

he decided to have a talk with Snow concerning the whole affair and what was to be done about his wife and her unborn child. Accordingly he called at the field office at noontime on August 20th.

On the Sunday prior to his calling at the field office he had purchased a revolver which he said he desired to take with him on fishing trips, and until the shooting had kept the gun in the glove compartment of his car. He went to the office twice. The first time he did not have the revolver. Before entering the office the second time he placed the revolver inside of his shirt, stating he did so because of the previous threats made by Snow. He stated further that when he entered the office there were present his wife, Snow and a Miss Oertle; that he talked to the latter a short while and then asked her to leave; that after Miss Oertle closed the door he started to ask Snow what he was going to do concerning Mrs. Young; that Snow said nothing but jumped up from where he was sitting and grabbed him; that he jerked the gun from his shirt; that while they were struggling for its possession he thought three shots were fired but he was not sure; that he remembered talking to persons afterward but because he was so upset he remembered nothing of the conversation. However, one of his superiors testified that immediately following the shooting defendant stated he had shot Snow and was glad of it.

Defendant's wife, when called as a witness in his behalf, substantially corroborated his testimony concerning the actual shooting. She also stated that she remembered talking to persons at the hospital where Snow was taken and in the district attorney's office two days after the shooting, but that she had no recollection of the questions asked or her answers thereto. The only testimony concerning the actual shooting was that given by the defendant and his wife.

Three issues are raised by defendant. (1) That the trial court erred in refusing certain offers of proof; (2) that the court erred in allowing defendant's wife to be impeached as to prior contradictory statements which she neither denied nor affirmed but merely stated she had no recollection of making, and (3) that the court erred in giving certain alleged contradictory instructions, and also in failing to give certain instructions offered by him.

In support of his first contention he argues that as

"the characters of the participants are always involved" and "are matters which the jury have a right to know independent of presumptions in order that they can reason how such a person would act under such circumstances" and as he was being driven to a point of "exasperation" the evidence of the facts which were so driving him "into an altercation with Snow," should have been submitted to the jury, and cites section 1870, subdivision 3 of the Code of Civil Procedure.

It is true, as defendant contends, that under said code provision the "act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto; . . ." are facts which may be proven at the trial. However, even if the evidence offered was proper under said section the admission of material objects other than writings are governed by the provisions of section 1954 of the Code of Civil Procedure, wherein it is provided:

"Whenever an object, cognizable by the senses, has such a relation to the fact in dispute as to afford reasonable grounds of belief respecting it, or to make an item in the sum of the evidence, such object may be exhibited to the jury, or its existence, situation, and character may be proved by witnesses. The admission of such evidence must be regulated by the sound discretion of the court."

The first offer consisted of a note which the defendant's wife admitted writing to the deceased and which related to her association with him. At best, said writing was only cumulative as regards her illicit relationship with Snow concerning which she had been allowed to testify at length, and which was not contradicted. Snow's actions and comments when confronted with such facts were likewise testified to at length by both the defendant and his wife. The second writing was of no value other than as illustrative of an obscene sense of humor on the part of the deceased. The third offer related to medicine alleged to have been given by Snow to Mrs. Young in an attempt to procure a miscarriage, and was of value only to substantiate the fact of her pregnancy, which likewise was admitted and not contradicted.

Even if it could be said that the trial court erred in refusing to admit the proffered evidence we cannot say, under the circumstances herein presented, that such refusal was an abuse of discretion under section 1954 of the Code of Civil Pro-

cedure, or that the refusal amounted to such prejudicial error as would demand a reversal. (Const., art. VI, § 4½.)

Defendant's next contention is predicated solely upon the fact that as his wife did not deny that she had made certain contradictory statements on previous occasions but upon cross-examination merely stated that she did not remember the same, there was nothing to impeach; while in his reply brief he further contends that in addition she was never confronted with the previous statements attributed to her, and that therefore under such circumstances the trial court erred in overruling his objections to the questions propounded by the district attorney. We likewise find no merit in this contention.

From the record it appears that the district attorney sought to interrogate her concerning statements highly contradictory to her direct testimony which were alleged to have been made (1) at the hospital a few hours after the shooting took place, and (2) in the office of the district attorney two days after the homicide. The questions attacked by the defendant were asked her during her cross-examination and to all of which she replied she did not remember. It is true that although the alleged statements were taken in shorthand and later reduced to writing by an official court reporter, the transcript of such questions and answers was not shown to her when she was first on the stand under cross-examination and prior to being asked concerning the statements so attributed to her. Later during the trial the reporter was called by the prosecution and was allowed to read the questions and answers from his notes. The defendant's objection, both to the questions asked the wife and the reporter, was that "there is no basis for impeachment of the witness. The witness testified that she didn't remember and that isn't the necessary foundation for impeachment," but this objection was overruled by the court. Thereafter the reporter was dismissed and the prosecution recalled the wife for further cross-examination. At this time she was confronted with the transcript and allowed to read the particular questions and answers before being interrogated by the district attorney. No objection was made by defendant to this line of cross-examination.

The rule, that before the contradictory statements of a witness may be properly admitted in evidence for impeach-

ment purposes, a proper foundation must be laid, is found in section 2052 of the Code of Civil Procedure, which provides in part that ''before this can be done the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them.''

In the case of *People* v. *Singh,* 20 Cal.App. 146 [128 P. 420], the defendant was asked upon cross-examination if he did not make certain statements on the day of his arrest in the presence of several deputy sheriffs, to which question defendant failed to give a direct answer, although it was repeated several times. Objections similar to those interposed herein were made. Upon appeal the reviewing court stated:

''It is true generally, as asserted by counsel for defendants, that a witness cannot be impeached by evidence of previous contradictory statements which he does not deny having made; but this rule is subject to the qualification that such evidence is admissible if the witness does not distinctly admit that he made the statements attributed to him. (Jones on Evidence, sec. 845; Stephen on Evidence, art. 131; *Stewart* v. *State,* 42 Fla. 591 [28 So. 815].)

''In the present case the evidently evasive answers of the assailed witness to several of the questions put to him were tantamount to a refusal to admit the statements therein imputed to him; and this in itself was sufficient to warrant the People in showing, if they could, that he did make those statements.''

The court therein further stated that the rule set forth in said section 2052 was designed for the purpose of fully informing the assailed witness of the particulars of the alleged contradictory statements together with the circumstances of the time and place of its making and the persons present, in order that the witness, in justice to himself and the party in whose behalf he was called ''might fairly and intelligently deny, affirm, or explain the statements attributed to him.'' Here, as in that case, it cannot be said that the witness did not understand the nature and purport of the contradictory statements imputed to her, nor does defendant so contend. She was fully informed of the time, place, and the persons who were present on the occasion referred to.

A comparable situation likewise is presented in the case of *People* v. *Vatek,* 71 Cal.App. 453 [236 P. 163]. There the wife of the defendant testified in his behalf, and upon cross-examination was asked whether or not she had made certain statements to the sheriff and the district attorney on a designated date, to which she replied that she did not remember whether she had or not. Under those circumstances this court stated: "Thus the proper foundation was laid for the introduction of the sheriff's testimony as in impeachment of Mrs. Vatek regarding the matter to which the said testimony related."

Although in view of the record, as previously mentioned, it would seem unnecessary to pass upon the second phase of defendant's second contention, i. e. the alleged failure of the district attorney to confront the witness with the notes taken by the reporter on the two designated occasions, it is interesting to note that such issue was directly before this court in the case of *People* v. *Talman,* 26 Cal.App. 348 [146 P. 1063]. It was there observed that the final sentence of section 2052 of the Code of Civil Procedure refers to "written statements" of the witness, and where such is the case "it is highly proper that they should be shown the witness." There as here the questions of the district attorney were predicated upon notes taken by a reporter during a conversation with the witness, the district attorney and the sheriff, which notes were later transcribed. The trial court overruled the objection that the transcript of the questioning should be shown to the witness. In sustaining such ruling this court declared that there is "no reason for requiring the writing to be exhibited to the witness where he has never had anything to do with the execution of it or even has not seen it before. The inspection by the witness of a typewritten transcript, made by a stranger to him, and which he has never seen before, could not assist the witness in his recollection of oral statements which he may have made. At least, it would offer him no greater aid than to have them fully read to him." Again, as in the case last cited, there is no contention made herein that the attention of the witness was not directed to all the circumsances and declarations that had any bearing whatever upon the alleged inconsistent statement. Nor was the writing involved in the present case a transcript of a judicial proceeding, as was discussed in *People* v. *Orosco,* 73 Cal.App. 580 [239 P. 82].

At the conclusion of the trial the court instructed the jury at length relative to the law of self defense, and during the course thereof, stated in part: ''The law of self defense is a law of necessity, and that necessity may be real or apparently real.'' Thereafter near the conclusion of the charge the court stated: ''No excuse or justification will afford a defense to a person charged with a crime unless such defense is based on a statute or ordinance. The so-called defense of the 'unwritten law' or 'the law of necessity' have no standing in this state.''

Defendant argues (1) that not alone was the jury confused by such instructions but (2) the court misinstructed them as well. We do not so construe this charge.

Directing our attention to defendant's first point it is to be noted that in the first instance the court stated that the law of ''self defense is *a* law of necessity'' while in the second instruction the words ''*the* law of necessity'' (italics ours) are preceded by the disjunctive ''or'' and can have reference only to ''the so-called unwritten law'' as *the* law of necessity. Although such wording may be open to the charge of ambiguity it is not such prejudicial error as to result in a miscarriage of justice. (Const., art. VI, §4½.) In that section it is specifically provided that no judgment shall be set aside or a new trial granted in any case on the ground of misdirection of the jury unless, after an examination of the entire case including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. (*People* v. *O'Bryan*, 165 Cal. 55 [130 P. 1042].)

Defendant's second point which relates to the ''unwritten law'' or ''the right to avenge a wrong done a female member of one's family,'' commonly referred to as the ''unwritten law'' (Words and Phrases (perm. ed.), vol. 43, p. 427), has never found sanction in this state, nor have we been referred to any case in support of defendant's contention in this regard. Neither is such defense found among those enumerated in the Penal Code. Defendant further relies upon section 1899 of the Code of Civil Procedure. Obviously that section has no reference to the situation presented in this case. Such is likewise true of the statement appearing in 15 California Jurisprudence 965, which also is cited by defendant. We are entirely in accord with that statement of the law but we find no application to the facts herein.

The remaining portion of defendant's final contention is directed at the refusal of the trial court to give certain instructions proposed by him. Even if it be assumed that the proposed instructions correctly stated the law it is readily apparent from a reading of the charge as a whole that the court "fully, clearly, and fairly" instructed the jury on all points of law "material to the case, and necessary for the information of the jury." (8 Cal.Jur. 307; *People* v. *Reese,* 65 Cal.App.2d 329 [150 P.2d 571].) Defendant has thereby suffered no injury from the refusal of the court to give all of his proposed instructions.

The judgment and order are affirmed.

Adams, P. J., and Thompson, J., concurred.