[Crim. No. 5737. Second Dist., Div. Two. Dec. 28, 1956.]

THE PEOPLE, Respondent, v. DONALD EUGENE HAHN
et al., Appellants.

Culver Van Buren for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

MOORE, P. J.—Pursuant to verdict appellants were adjudged guilty of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245.) They appeal from both the judgment granting them probation and from the order denying their motion for a new trial. They now demand reversal on the grounds of insufficiency of the evidence and the admission of their confession assertedly not free and voluntary. They were accused in three counts, to wit: robbery, kidnapping for the purpose of robbery and assault by means of force likely to produce great bodily injury. Acquittal on the first two charges followed the trial.

Appellants met one Adams in a saloon in Burbank during the evening of January 5, 1956. He was a stranger to them and to a woman with whom they were drinking, but on request he agreed to drive the three to their homes after closing time at 2 a. m. All four left the sanctuary of Bacchus together, Hahn carrying a six-pack carton of beer. They were soon compelled to stop by reason of some defect of the conveyance. While they waited, appellants and the woman imbibed the beer in which Adams did not participate. He drove on and after letting the woman out near her apartment, the men continued. Hahn sat by Adams who drove while Wood occupied the rear seat. Pursuant to Hahn's directions, Adams drove off Olive Street. He was told to stop and as he did

so he was struck on the back of his head by Wood with a beer can. He pretended to be unconscious as someone removed his wallet from his hip pocket but left undisturbed his money in other pockets. One of the men said, "If he makes a move, kill him." Hahn thereupon took the wheel and drove for several blocks. Unable to turn on the headlights, they stopped, revived Adams and as they were in the act of removing him to the rear seat, he made his escape, sought refuge in the nearby home of one Kinzler who called police. Appellants drove away in Adams' automobile while the officers conveyed Adams to the hospital where he was treated for cuts on his head. His car was soon discovered and appellants were apprehended while sitting in a conveyance at the rear of Hahn's home.

Appellants relate a rejected account of the above occurrences. Hahn testified that the three drove around, drinking beer; that Adams refused to turn off the ignition at Hahn's request; that when Hahn reached over and shut off the motor a scuffle ensued; that when Wood attempted to stop the fight he might unintentionally have hit Adams.

After appellants had been incarcerated, they signed their confessions on January ninth and tenth.

### Evidence Sufficient

It is contended that there was no evidence as to the size of the head wounds, nor as to the severity of the cuts; that the identity of the party guilty of the battery was not proved; that at the time he appeared at Kinzler's door there was neither blood on Adams nor any unusual mark; that his cuts did not require sutures or any follow-up treatment; that "the record is devoid of any evidence whatsoever that the force applied was likely to have effected great bodily injury."

The record shows that the three men were in the automobile. Hahn sat beside the driver while Wood sat behind him. There is no proof that Adams was hit by a total stranger. The inference is reasonable that the blow was directed by Wood. But since Hahn and Wood were acting in concert and together they both enjoyed the fruits of their crime, it follows that both were guilty of doing whatever either did. As to whether the battery was severe enough to warrant a conviction under Penal Code, section 245, that was a question of fact and the jury found it against appellants. Adams testified that he was hit on the back of the head "with an empty beer can four times" but was not made unconscious; was hit "in the back of the head towards the top with a beer can"; he did "not know whether they took any stitches in his head"; was hit

"in the back of the head towards the top, and a couple of other times, a total of four times" he was struck; was hit "fairly hard" the first time; was conscious but made no outcry.

Inasmuch as the evidence was in conflict as to whether appellants beat Adams with a tin can, the jury enjoyed the prerogative of determining whether appellants had assaulted him "by means of force likely to produce great bodily injury." While a tin beer can is not regarded as a deadly weapon, yet under the facts of this case the jury could fairly find that it was applied to Adams' head with a force likely to produce a great bodily injury. It is not necessary that it be found that the can was actually used with such force that it did cause great bodily injury. The gravamen of the offense denounced by section 245 is "the likelihood of bodily injury as a result of the force used or attempted to be used. The degree of force used is not as important as the manner in which it is used." (*People* v. *McIlvain,* 55 Cal. App.2d 322, 331 [130 P.2d 131].) The measure to be applied to the force is whether it was likely to cause serious bodily injury. (*People* v. *Pullins,* 95 Cal.App.2d 902, 904 [214 P.2d 436] ; *People* v. *Schmidt,* 66 Cal.App.2d 253, 256 [152 P.2d 1021].) It is not to be measured by the extent of the injuries suffered by the victim. Such injuries need not be necessarily serious. (*Ibidem.*) A conviction under the section may be had where the defendant used only his fist if the circumstances of the assault and the manner of its execution warrant the jury in finding that the force used was likely to produce great bodily injury. (*People* v. *Score,* 48 Cal.App.2d 495, 498 [120 P.2d 62].) The crime is complete where the act of defendant was "a means of force likely to produce the injury." (*People* v. *Pullins, supra.*)

 Inasmuch as the reviewing court is powerless to reverse a judgment where the facts established warrant inferences of a defendant's guilt, this appeal must on that ground be denied. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) Appellants induced their victim to drive them to a residential section of their city. He trusted their camaraderie and ostensible good will. While he was unconscious of their intentions, and was confident that his kindness had not been misdirected, he was suddenly and repeatedly struck on the head by the person who sat behind him. He probably avoided further punishment solely by virtue of his ability to escape. The jury could hardly have been mistaken in finding that Wood delivered the blows that struck Adams down. While Hahn

sat to his right, Wood sat in the rear seat. Although Adams did not see the instrument used, he knew the cans were in the car and available. The jury were reasonably justified in inferring that Wood struck him with a can.

■ While the wounds on Adams' head did not appear to be incurable, they were such as to require medical attention and because life-long nervous disorders are known to have resulted from no more violence than was applied to Adams, it required no great strain of the deductive processes to infer that the force used upon him was "likely to produce great bodily injuries." Such was the problem posed for the jury (*People* v. *McCaffrey*, 118 Cal.App.2d 611, 616 [258 P.2d 557]) and the evidence was sufficient to support their implied findings. (*People* v. *Schmidt*, 66 Cal.App.2d 253 [152 P.2d 1021].)

*People* v. *Fuentes*, 74 Cal.App.2d 737 [169 P.2d 391], cited by appellants is not pertinent. Fuentes struck his victim with his fist. The latter's misfortune lay in the fact that in falling his head struck a steel rail whereby the injuries were suffered.

### CONFESSIONS FREE?

Appellants gave written confessions to the police which at the trial they contended were not freely and voluntarily given. They now contend that they were prejudiced by the admission of such confessions. At the outset appellants are confronted with two handicaps, namely, (1) the trial judge admitted the confessions on the strength of the testimony of Officer Dailey supported by that of Officer Sartoris who testified that he had heard the confessions, made prior to the preparation of the statements, at which time he heard them confess orally to having beaten and robbed Adams. (2) The evidence as to the signing of the documents was fully presented to the jury and they impliedly found that they were freely and voluntarily made. ■ It is the law that the admissibility of a confession is preliminarily addressed to the court and the exercise of its discretion will not be disturbed unless clearly shown on appeal to have been abused. (Code Civ. Proc., § 2102; *People* v. *Mehaffey*, 32 Cal.2d 535, 548 [197 P.2d 12]; *People* v. *Jackson*, 125 Cal.App.2d 776, 778 [271 P.2d 196].) But in such action the law has provided an appeal from the judge to the jury.

Because the court's ruling in admitting the confessions was not binding on the jury, after Officer Dailey had positively denied that he had told both defendants or either of them

that if they would sign a statement they would be charged with robbery only and would get probation, defendants and their witnesses severally testified to the contrary, that is, if Hahn did not make a statement he "would throw a book at him"; that Dailey told Hahn that the latter might go to jail for life for kidnapping but that he, Dailey, would not press the kidnapping charge and get him off with probation for second degree robbery; that Dailey induced Mrs. Hahn to get her husband to make a statement admitting the charges. Hahn testified that he had copied part of a form supplied by Dailey but was ignorant of its meaning; that Dailey had promised both appellants that for their cooperation he would get them probation; that Dailey telephoned an unidentified party and reported to appellants that all was set for them to get second degree robbery. Mrs. Hahn testified that when she talked to Officer Dailey he told her that her husband stood accused of kidnapping, grand theft and robbery and that although his crimes called for lifetime in jail, he, Dailey would do all he could if she would try to get her husband to sign a confession.

Wood testified that Dailey told him that if he would make a statement, one charge of only second degree robbery would be made against him and that probation would be granted. He was supported by Wood's father who testified that Dailey had promised him that if Thomas would cooperate with the police the charge would be reduced to second degree robbery and probation would be granted.

Because of the conflict in the evidence, the court properly submitted the issue to the jury for their "own independent judgment as to the free and voluntary character of the confessions to determine whether they are admissible or could be considered by you or not." By such statement and the court's subsequent charge, the jury were empowered to determine whether the confessions were free and voluntary. They found in the affirmative. Such finding left no issue undecided and the evidence was sufficient.

Judgment and the order denying their motion for a new trial are affirmed.

Fox, J., and Ashburn, J., concurred.