[Crim. No. 6189. Second Dist., Div. Three. Dec. 11, 1958.]

THE PEOPLE, Respondent, v. JAMES BENJAMIN GRACE et al., Appellants.

[Crim. No. 6190. Second Dist., Div. Three. Dec. 11, 1958.]

THE PEOPLE, Respondent, v. MORRIS GERALD STRAIN, Appellant.

Thomas M. McGurrin, under appointment by the District Court of Appeal, for Appellants.

A. L. Wirin and Fred Okrand as Amici Curiae on behalf of Appellants.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

VALLÉE, J.—In a jury trial defendant Grace was convicted on six counts; defendant Johnson, on two counts; defendant Mathews, on two counts; all, of armed robbery. (No. 6189.) Defendant Strain was convicted by the same jury on three counts of armed robbery in a separate action. (No. 6190.) The actions were consolidated for trial. All defendants have appealed from orders denying them probation, from the judgments, and from orders denying their motions for new trials. ▮ The orders denying defendants probation are not appealable (*People* v. *Winston*, 46 Cal.2d 151, 153-154 [293 P.2d 40]) and the appeals therefrom will be dismissed.

There is no contention on the part of defendants Grace, Mathews, or Strain that the evidence is insufficient to support the verdicts. Johnson so contends.

Defendants Grace, Johnson, and Strain confessed to the police orally and in writing. It is contended the confessions were involuntary, and that their admission in evidence was prejudicial error and a denial of due process.

The officers to whom Grace confessed testified they used no force, made no threats or promises to him, and the confession was voluntary. Grace testified he was in custody five days before he was taken before a magistrate, he was struck every day, and he signed the confession only because he had been questioned continuously and beaten.

▮ Where there is a conflict in the evidence as to the

circumstances under which a confession was made, the court may properly submit the issue to the jury for their independent judgment as to its free and voluntary character. (*People* v. *Crooker,* 47 Cal.2d 348, 353-354 [303 P.2d 753] ; *People* v. *Hahn,* 147 Cal.App.2d 308, 313 [305 P.2d 192].)[1] ■ If the defendant testifies that the confession was involuntary, his credibility is a matter for the jury's determination. (*People* v. *Gomez,* 41 Cal.2d 150, 162-163 [258 P.2d 825].) ■ Where the issue is submitted to the jury they are the exclusive judges and determine whether the confession was free and voluntary, and the jury's finding against the defendant's contentions is binding on review. (*People* v. *Crooker,* 47 Cal.2d 348, 352 [303 P.2d 753] ; *People* v. *Soto,* 155 Cal.App.2d 344, 346 [317 P.2d 1005].) The jury's determination in the present case that Grace's confession was free and voluntary, based, as it was, on conflicting evidence, cannot be upset on review.

■ Grace also says it was error to admit his confession because of the fact he was held in custody five days before he was taken before a magistrate. Violation of the mandate that a defendant must be taken before a magistrate within the time prescribed by section 825 of the Penal Code without coercion does not render a confession inadmissible. (*People* v. *Speaks,* 156 Cal.App.2d 25, 37 [319 P.2d 709].) In the recent case of *Crooker* v. *California,* 357 U.S. 433 [78 S.Ct. 1287, 2 L.Ed.2d 1448], the Supreme Court of the United States said (2 L.Ed.2d 1452) :

"The bare fact of police 'detention and police examination in private of one in official state custody' does not render involuntary a confession by the one so detained. *Brown* v. *Allen,* 344 U.S. 443, 476 [97 L.Ed. 469, 499, 77 S.Ct. 397] (1953). Neither does an admonition by the police to tell the truth. *Sparf* v. *United States,* 156 U.S. 51, 55, 56 [39 L.Ed. 343, 345, 15 S.Ct. 273] (1895), nor the failure of state authorities to comply with local statutes requiring that an accused promptly be brought before a magistrate. *Fikes* v. *Alabama,* 352 U.S. 191 [1 L.Ed.2d 246, 77 S.Ct. 281] (1957)."

Johnson asserts his written confession was obtained during

[1] The jury was instructed: "The law absolutely forbids you to consider a confession in determining the innocence or guilt of a defendant unless the confession was voluntarily made, and although the court has admitted evidence tending to show that a defendant made a confession, you must disregard the asserted confession entirely unless you, yourselves, by your own weighing of all the evidence, your own judging of the credibility of witnesses, and your own reasonable deductions, conclude that the alleged confession not only was made, but was voluntary."

a period of illegal detention; that it was admitted in evidence without a showing that it was voluntary; and that it was made as a result of his having been kicked by a police officer.

Johnson confessed almost immediately after his arrest and gave the police a written confession shortly thereafter. There was no proof, before Johnson's confession was admitted in evidence, that it was freely and voluntarily given. He asserts that for this reason it was prejudicial error to admit it. No objection was made to the admission of the confession on this ground. ■ Of course, preliminary proof that the accused made the confession freely and voluntarily, without coercion, threats, or undue pressure, and without promises of reward, immunity from punishment, or leniency, real or apparent, by those in authority, must be made by the prosecution to lay a foundation for the admission of the confession. ■ However, Sergeant Eastenson testified in rebuttal that he was present when Johnson confessed and that the statement was freely and voluntarily made. The failure to require the laying of a proper foundation for a confession is without prejudice if the proof is later introduced. (*People* v. *Northcott,* 209 Cal. 639, 652 [289 P. 634, 70 A.L.R. 806]; *People* v. *Skinner,* 123 Cal.App.2d 741, 749 [267 P.2d 875]; 8 Cal.Jur. 116, § 205.) Since the jury impliedly found on conflicting evidence that Johnson's confession was voluntary, we are bound by that finding.

What we have said with respect to Grace's claim that his confession was involuntary because of his claimed illegal detention applies to Johnson's claim to the same effect.

Strain asserts he was denied due process in that the uncontradicted evidence shows his confession was obtained by coercion; he asked for a lawyer and was denied one; and he was not taken before a magistrate promptly.

■ Strain testified to facts which would have warranted the jury in finding that his confession was not free and voluntary. However, the officers to whom the confession was made contradicted Strain's testimony and testified he made the statement to them freely and voluntarily. The conflict was for the jury, not this court, to resolve.

■ While in custody and before he was taken before a magistrate, Strain asked the officers for permission to see a lawyer. He was told he would have plenty of time to see one. He was not permitted to see one. The refusal of a request to see a lawyer by a person under arrest and before he is taken before a magistrate is not, in itself, ground for denying admis-

sion of such person's confession in evidence. Nor does it result in a denial of his fundamental rights. It is a factor to be considered by the jury in determining whether the confession was voluntary. (*People* v. *Crooker, supra,* 47 Cal.2d 348, 352-353; *Crooker* v. *California, supra,* 357 U.S. 433 [78 S.Ct. 1287, 2 L.Ed.2d 1448, 1453].)

On direct examination Strain testified he had told the police he did not know anything about the robberies with respect to which they were questioning him, and he had signed the confession although it was false when hit by one of the officers. On cross-examination he reiterated this testimony. He said he guessed that after he signed the statement the officers had a conversation with him but he did not recall what was said; he did not think he ever told the officers he participated in the three robberies. The deputy district attorney then said: "Q. And you indicated formerly that you deny each and every charge that you are accused of? A. That's correct. Q. And I will now play a recording for your benefit and I will ask you this question after listening to the recording: whether or not you recognized your voice as being one of the three voices on this tape recording. Now, will you please listen carefully?" A recording was then played, following which Strain denied that any one of the three voices he heard was his. In rebuttal Officer Eastenson testified he and Officer Leonard had a conversation with Strain which was recorded. The recording was played again. Eastenson then testified the recording correctly reflected the conversation between Strain, Officer Leonard, and himself on August 9, 1957; pointing out, as the recording was played, which voice was his, which Leonard's, and which Strain's. On cross-examination of Eastenson, defendants' then counsel sought to show that the recording did not accurately reflect the conversation; that the voice attributed to Strain probably was not his; and implied that some of the conversation had been omitted. Sergeant East, assigned to the sound laboratories of the police department, was then called and testified concerning the method used in making and preserving the recording in question. On cross-examination of East, counsel for defendant sought to show there may have been "dubbing" of voices which the jury might not detect. On redirect examination of East, without objection, the recording was played again. East testified it was exactly the same recording he took on August 9, 1957.

It is contended the introduction and playing of the recording on cross-examination of Strain and again in rebut-

tal was prejudicial error. It is argued no foundation was laid for impeaching Strain by playing the recording. (Code Civ. Proc., § 2052.) There was no error. The procedure followed differed from the ordinary in that instead of the cross-examiner relating the prior statements to the witness as a foundation, he presented the statements by the voices from the recording. (See *People* v. *Young*, 70 Cal.App.2d 28, 33-35 [160 P.2d 132].) ▪▪▪ When Strain denied having had the conversation and denied his voice was one of those on the recording, it was of course proper to replay the recording to Eastenson for impeachment. (*People* v. *Sherman*, 97 Cal.App. 2d 245, 254-255 [217 P.2d 715].) It was further proper to replay the recording to give the jury an opportunity to compare the voice said to be Strain's on the recording with his voice as they heard it from the witness stand, and to convince the jury there had been no ''dubbing.''

▪▪▪ The recording should have been introduced as a part of the People's case in chief. (*People* v. *Speaks*, 156 Cal.App. 2d 25, 35 [319 P.2d 709].) The fact that it was not did not, however, render it inadmissible for purposes of impeachment. It was allowable also as additional evidence on a point put in dispute by Strain's testimony and the cross-examination of Eastenson and East. (*People* v. *Avery*, 35 Cal.2d 487, 491-492 [218 P.2d 527].)

▪▪▪ The statements of Strain on the recording involved Grace and Mathews in some of the robberies. It is asserted it was error to admit the recording in evidence because of this fact. The fact did not make the recording inadmissible or its admission prejudicial. The jury was instructed that the recording could not be considered against any defendant other than Strain.

▪▪▪ During a recess of the trial and while counsel for defendants was in the corridor outside the courtroom, the deputy district attorney prosecuting the case had a deputy sheriff stop the defendants from conversing together. On the court's reconvening, out of the hearing of the jury, counsel for defendants called the judge's attention to the occurrence. The following then occurred: ''MR. VAUGHN [attorney for defendants] : Your Honor, I understand while I was out trying to call to find out where a witness was, I understand in my absence some difficulty arose. My clients were conferring together and the District Attorney and the Sheriff's Department refused to allow them. MR. SNYDER [Deputy District Attorney] : It was at my request the defendant Strain be

separated from the co-defendants until he finished his testimony, your Honor. THE COURT: Well, ordinarily, of course, the defendant must be permitted an opportunity to talk together during their recess period but—— MR. VAUGHN: And I will ask that they have that permission. THE COURT: Well, I don't think there will be any future difficulty with reference to that, in any event. MR. SNYDER: I hadn't finished my cross-examination. MR. VAUGHN: In view of this happening, I would rather, with the Court's permission, let them finish their conference. THE COURT: No, we will proceed.''

Defendants assert the action of the prosecutor and of the deputy sheriff denied them a fair trial. Defendants had a perfect right to converse together during the recess. The fact that they were conversing together was no concern of the deputy district attorney. His business was to prosecute the lawsuit. However, it does not appear that any juror had knowledge of the occurrence and no prejudice is shown.

At a later stage of the trial the following occurred in the absence of the jury: "MR. VAUGHN: Your Honor, I would like to take up one thing before that happens. I am informed by my clients that this officer—I don't know his name over here—made certain intimidating, threatening remarks to one of these defendants during the recess, to wit, he said, 'We won't be in the presence of the Court always,' and some other things, and I would like the Court to issue some instructions. THE COURT: Well, yes; any deputy in charge of defendants should not make any such statements at all. Unfortunately the Sheriff's office sees fit to send two different officers to every session with the defendants, and, furthermore, from past experience in criminal matters, I am impressed by the fact that Deputy Sheriffs often do not realize that their actions may constitute a violation of due process and may require even the retrying of a case, which would be otherwise properly tried except for their actions. You should keep that in mind. MR. SNYDER: I might state for the record, your Honor, as far as the separating of the defendant Strain was concerned, that was done at my request. THE COURT: Well, that has already been taken up at the bench. All right.''

Defendants say the statement of the deputy sheriff was intimidating and threatening and that its effect was to deny them due process. The statement alone is meaningless. We think it was innocuous. In any event, all the court was asked to do was "to issue some instructions,'' and the court complied. There was no denial of due process.

■ The victims of the two robberies in which the jury found Johnson participated did not at first identify him as one of the robbers. They first identified Grace and Mathews as the robbers. Johnson says that because of that fact the only evidence connecting him with the offenses was his confession, which is insufficient to support the verdicts against him. The point is obviously untenable. On cross-examination Johnson admitted he had previously been convicted of three felonies: burglary, unlawful possession of narcotics, and grand theft. There was evidence other than his confession connecting him with the offenses. In a conversation with the officers Grace described the guns which were used in committing the offenses of which Johnson was convicted. Following the conversation the officers went to 3666½ Second Avenue, Los Angeles, where they found Johnson in bed. They asked him where the guns were. He said they were in the refrigerator. He was then arrested. Sergeant Eastenson found both guns described by Grace in the back of the freezing compartment of the refrigerator. The clip of one gun, an automatic, contained three rounds of live ammunition. A fourth round was in the chamber. A .38 caliber shell was in the other gun, a .38 pistol. One of the victims testified he could not positively identify Mathews; that the person with Grace could have been Johnson. The other victim testified Mathews was at his "back most of the time"; there could be "some doubt about Mathews"; there was some reservation in his mind as to the person who was with Grace. It is apparent from the record that the jury may well have concluded that the victims of the robberies were mistaken and that it was Johnson, not Mathews, who participated with Grace in the robberies of which Johnson was convicted.

■ The People requested the court to give two instructions on circumstantial evidence.[2] The court refused to give

---

[2] The instructions requested read: "When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt.

"I instruct you further that you are not permitted, on circumstantial evidence alone, or when circumstantial evidence is substantially relied on in the People's case, to find the defendant guilty of [the] [any] crime charged against him unless the proved circumstances not only are consistent with the hypothesis that the defendant is guilty of the crime, but are irreconcilable with any other rational conclusion."

them as unnecessary. Johnson asserts that all the evidence against him was circumstantial and that it was prejudicial error to refuse the instructions.

The instructions should have been given. (*People* v. *Yrigoyen*, 45 Cal.2d 46, 49 [286 P.2d 1].) We think the failure to give them was not prejudicial. The victims said one of the robbers could have been Johnson. As we have said, the guns used in the two robberies of which Johnson was convicted were found in his possession. He confessed almost immediately after being arrested, and gave the officers a written confession shortly thereafter. In his confession he described the two guns he used in the robberies. His description was the same as that which Grace had previously given the officers. There is no doubt the jury was justified in concluding that Johnson was guilty as charged. We are satisfied that if the instructions had been given the result would have been the same. The evidence of Johnson's guilt is so clear we cannot hold the failure to give the requested instructions to be reversible error. (*People* v. *Levene*, 107 Cal.App. 2d 125, 128 [236 P.2d 604].)

In behalf of Mathews separately, the only point made is that failure to take him before a magistrate within 48 hours constituted a denial of due process. Mathews was arrested on July 13, 1957, a Saturday, and taken before a magistrate on July 16, the following Tuesday. ▮ As we have said with respect to Grace, mere illegal detention without coercion does not constitute a denial of due process. The jury impliedly found there was no coercion. No suggestion is made that anything happened between Saturday and Tuesday which prevented Mathews from having a fair trial. The record is to the contrary.

We are not to be understood as condoning the practice of the police in detaining a person in custody after his arrest without taking him before a magistrate without unnecessary delay. Penal Code, section 825, provides that the defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays. Penal Code, section 145, provides that every public officer, having arrested any person on a criminal charge, who willfully delays to take such person before a magistrate having jurisdiction, to take his examination, is guilty of a misdemeanor. The detaining of persons in custody and not taking them before a magistrate

without unnecessary delay is a prevalent practice. We have yet to hear of any public prosecutor, complying with his oath of office, prosecuting any police officer for violation of section 825. The police are permitted to flaunt, defy, and violate the law they have sworn to uphold by the officers whose duty it is to prosecute them. Detention of a prisoner without taking him before a magistrate without unnecessary delay is not only a violation of section 825: it deprives the person of his constitutional right to be admitted to bail (Const., art. I, § 6), denies him a speedy preliminary hearing (Const., art. I, § 8), deprives him of his right to be advised of his rights by a magistrate (Pen. Code, §§ 858, 859), and in many cases deprives him of the right and opportunity to obtain counsel. (Pen. Code, § 825.) In the present case the detentions of Grace, Johnson, and Strain were obviously illegal. Grace was arrested on July 7, 1957; he was not taken before a magistrate until July 12. Johnson was arrested on July 11, 1957; he was not taken before a magistrate until July 15 or 16. Strain was arrested on August 6 or 7, 1957; he was not taken before a magistrate until August 12. The ordinary motive for extended failure to take a prisoner before a magistrate is not unrelated to the purpose of extracting a confession. In the federal courts the illegal detention of a person under arrest is ground for excluding a confession. (*Mallory* v. *United States*, 354 U.S. 449 [77 S.Ct. 1356, 1 L.Ed.2d 1479].) It would seem that the only possible way of stopping the illegal practices of the police is a similar rule in the state courts. But, as an intermediate reviewing court, we are bound by the decisions of the Supreme Court holding that the mere illegal detention of a person under arrest, no matter for how long, is not ground for excluding a confession.

The judgments and the orders denying new trials are affirmed. The appeals from the orders denying probation are dismissed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied February 4, 1959. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.