[Crim. No. 17. Fifth Dist. Jan. 9, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK WRIGHT, Defendant and Appellant.

Willard L. Weddell, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and C. Michael Gianola, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J. — The appellant, Frank Wright, was charged jointly with William R. Steiner with burglary and grand theft. The defendant Steiner entered a plea of guilty to grand theft, and the charge of burglary against him was dismissed "in the interest of justice." The jury brought in a verdict of guilty against the appellant Frank Wright on both counts. Probation was denied, and he was sentenced on each count to a term of imprisonment in state's prison, the sentences to be served concurrently. The defendant Wright appealed from the judgment. He was represented by the public defender at the trial, his present attorney acting for him on the appeal.

The essential question that the jury answered in this case was whether the appellant Wright participated with guilty knowledge in the raid which Steiner conducted on coin and antique shops in the San Joaquin Valley. Everyone, including the appellant, admits that Steiner was guilty of successive thefts during two days in the area involved, namely, Merced County and Fresno County. The defendant Steiner speaks of his work as "procuring" various articles of personal property in the area; the record demonstrates that he is a modern Autolycus, "a snatcher up of unconsidered trifles."

The district attorney adduced evidence on a number of thefts similar to those charged in the information in order to show system and guilty knowledge. For the sake of clarity we shall resort to a chronological treatment of the successive activities of the two defendants.

Prior to the occurrence of the events for which the defendant Wright was convicted, the record shows that appellant and Steiner were close friends for around 15 years. Steiner had recently come from Texas, and had been staying at appellant's house in Rodeo for about four weeks. During that time, the two had visited a few coin shops together in the San Francisco Bay area.

On March 1, 1961, the appellant drove Steiner in his automobile to Merced. At around 4 o'clock on that day the two entered a shop owned by Mrs. Betty Lichtenfeld and there participated in a discussion of stamps and coins. Mrs. Lichtenfeld showed her collection of Indian Head pennies to Steiner while appellant was standing next to him. Later, appellant

walked to various places in the store. Steiner handled these Indian Head pennies, among which were three coins dated 1908-S, each being contained in a separate holder. Without having purchased anything, appellant and Steiner left the store, whereupon Mrs. Lichtenfeld proceeded to replace the coins which had been examined; she discovered that one of her encased 1908-S Indian Head pennies was missing. This had been marked for sale at $10, and the penny later turned up in the transactions of the defendants, as hereinafter noted.

At about 4:30 o'clock in the afternoon on the same day, appellant and Steiner appeared at the Atwater Stationers in the city of Atwater. They were waited upon by Harold Holman III, who was on duty at the time and who helped his father manage the store. Appellant and Steiner asked to see stamps and coins, and they remained in the store for about an hour and a half, during which time they looked through boxes of coins and a plate block file. Appellant also offered to sell an encased 1908-S Indian Head penny. He stated to Mr. Holman that he had placed a price of $10 on it and said, ''Why don't you give me $10 and a nickel for it so I can make a profit?'' Holman offered him $7.50 for the coin, and the offer was accepted. Appellant signed ''F. Wright'' on a receipt, showing that he had received $7.50 for one 1908-S Indian Head penny, and he was given the money for it. He then purchased a 1957 proof set for Canadian pennies, a plate block and two souvenir sheets for a total sales price of $7.35. It was about closing time when appellant and Steiner finally left. On the following day the Holman store discovered that one of the plate blocks, and various other items, were missing. At the time of the trial Mrs. Lichtenfeld positively identified the Indian Head penny, enclosed in its holder, as the one belonging to her which had been stolen from her shop.

Early in the morning of March 2, 1961, the two friends entered the store of Durward Blackmon in Fresno. He is a dealer in coins and antiques. Steiner told Mr. Blackmon that he had coins and stamps to sell, and that he might also be interested in buying or trading. Steiner asked Wright to go out to the car and bring in his case, which appellant did, whereupon Steiner opened it on the counter, laid out a few items and asked Mr. Blackmon if he was interested in buying them. While Blackmon was examining the tendered goods, appellant was roving through the shop and rummaging through a box containing various articles of costume jewelry which the store had on sale. This box was located about six feet directly

behind the point where Steiner was standing at the counter, and Steiner was never in the vicinity of the box; it would have been physically impossible for Steiner to have taken any costume jewelry from the box without having been seen by Mr. Blackmon, but this is not true with respect to the appellant. After about 30 minutes in the store, appellant and Steiner left, and shortly thereafter Blackmon discovered that numerous articles of costume jewelry, including a certain pair of cuff links and several stickpins were missing from the box where they had been kept. These articles were later found in the possession of Steiner and were positively identified at the trial by Mr. Blackmon as belonging to him.

At about 10 o'clock a. m. on the same day, March 2, 1961, appellant and Steiner entered the coin and antiques store of Tom Duffy in Fresno. After awhile, both Wright and Steiner went outside together, brought in a box from the car and tried to sell some jewelry therefrom to Mr. Duffy. Steiner did the talking while appellant remained right by him. Among the items offered were a certain pair of cuff links and three or four stickpins, and both appellant and Steiner displayed and handled these items. Duffy told appellant and Steiner that he did not wish to buy any of the items, and the two friends left the store. At the trial Duffy identified the articles, which constituted People's Exhibit 9, as those stolen from Mr. Blackmon; the identification of the cuff links was positive because of the cumulative effect of various distinguishing features.

At about 1 p. m. on the same date, March 2, 1961, Richard Avadisian, a police detective with the Fresno Police Department, having received a radio message alerting him, went to the Coast Stamp Company in Fresno and there met Mr. Lee, the operator; he was in the store when appellant and Steiner arrived. Steiner walked over to the counter and started talking to Mr. Lee, while appellant began to browse around the establishment. Steiner took some stamps and coins out of his pocket, laid them on the counter and offered them for sale. These items included a particular plate block worth $43. Steiner agreed to and did sell the plate block and other items to Lee for $56. All of these items were later located at the Coast Stamp Company and were identified by Holman as belonging to his shop. He testified that they had been stolen from his store, the Atwater Stationers, on March 1, 1961.

At a few minutes before 5 o'clock in the afternoon on March 2d, appellant and Steiner arrived at an antique shop in Atwater operated by Joanne White and her mother. The

two friends remained there for about three-quarters of an hour and during the time inquired about silver, china and coins. Appellant went through a coin case and handled the money therein, while Steiner wandered about the shop and talked to Miss White. The two left without making any purchase; Miss White later discovered that two of her encased quarters had been stolen.

Shortly thereafter, on the same day, appellant and Steiner entered the Atwater Stationers again. Jack "Skip" Kearney, a 16-year-old school boy, was on duty. Steiner went behind the counter and began to go through the plate block file, while appellant was looking at and handling coins. At about 5:30 p. m. Harold Holman III came into the store, and when he saw appellant and Steiner he left immediately to report their presence to the police and to his father, Harold Holman, Jr., at his nearby accounting office. The elder Holman parked his car at the back of the store and at 5:35 p. m. stood in the rear doorway and watched appellant and Steiner, unobserved. He saw Steiner place stamps and glassine envelopes in his pockets. He then went to the front of the store where his son was waiting with police officers and told the officers what he had just observed. They picked up the two.

Raymond Blake, of the Atwater Police Department, testified that he went into the store and told Steiner and appellant that they were wanted for questioning at the police station; there Steiner was asked to empty the contents of his pockets on a desk; he complied by removing a large number of coins and stamps from his pocket. At that point Delbert Ellis, another Atwater police officer, asked appellant likewise to empty his pockets; he removed his loose change and placed it on the counter; then officer Ellis searched him and found three encased coins, a nickel and two quarters, hidden in the lower righthand pocket of his jacket. Immediately afterwards, appellant's car, a 1951 Mercury, was searched, and the police discovered a large assortment of coins, stamps, Chinese vases, beaded purses, and old Hebrew Bibles. A large number of the stamps and coins taken from Steiner and from appellant's automobile were referred to in the record, and testimony was given that the property taken from the Holman store was valued in excess of $225.

The encased nickel taken from appellant was positively identified by Mr. Holman, Jr., as having been stolen from his store on the preceding day. The two encased quarters were

identified by Miss White as having been stolen from her establishment on the day of the arrest.

The police confiscated the packaged coins from Steiner, but allowed him to keep his loose change; however, they permitted appellant to place in his pockets both his loose change and the three encased coins. Officer Blake questioned them as to where they had obtained the large assortment of confiscated articles. Appellant first stated that he had picked up a red-headed hitchhiker just outside of Atwater, and that Steiner had bought them from him; he described this hitchhiker as being a tall fellow dressed in khakis and carrying a canvas bag which contained the articles in question. After further questioning, Steiner told a different story, namely, that the redheaded hitchhiker was picked up just outside of Fresno. Later, Wright changed his story by stating that although there was, in fact, a redheaded hitchhiker, they did not acquire the articles from him; appellant changed his story three times with reference to where he had picked up the hitchhiker. Finally, he said he did not know where the questioned articles came from.

When appellant and Steiner were taken to the Merced County Sheriff's Office and left sitting on a bench in the jailer's office, the jailer called a trusty, one Ray DeHart, to come down and get appellant and Steiner some cigarettes. When DeHart arrived Steiner asked him to get him three packs of cigarettes. Steiner reached in his pocket and gave him some change. DeHart then went upstairs, got the cigarettes, and returned. And, as appellant had his hand open to receive the cigarettes, DeHart handed them to him. At this moment Steiner handed DeHart the three encased coins previously in the possession of the appellant and told DeHart to take and keep them and to get rid of the holders. However, DeHart turned the nickel and two quarters over to Deputy Jordan. Immediately thereafter, DeHart identified these coins at the county jail in the presence of Deputy Jordan and Officer Blake as having been given to him by Steiner.

The defense urged by the appellant was that he was in effect merely an innocent bystander during all of this criminal activity and that he knew nothing whatsoever of the wrongful acts performed by his friend Steiner. Steiner backed up this defense, appearing as a witness for the defendant; he had previously been convicted of grand theft on his plea of guilty to the offense involved here; he admitted that he had also been convicted of a felony for which he had later been par-

doned, according to his account, and that he was presently an escapee from a Texas mental hospital. Steiner attempted completely to exonerate appellant of all criminal liability by testifying that he himself had stolen all of the items in question without the knowledge or participation of appellant. He attempted to explain that he had given the Indian Head penny and the encased nickel and quarters to appellant for the purpose of permitting him to swap them for other coins without any knowledge on appellant's part that the articles had been stolen. He further attempted to refute the testimony of the People's witnesses by testifying that he, rather than appellant, took possession of the encased nickel and two quarters after they had been taken from appellant and placed on the counter at the police station. Steiner thus attempted to draw to his own breast all of the spears of the army of law enforcement officers so as to permit his friend to escape. Wright also took the stand and gave testimony to the same general effect, that he was not aware of any criminal activity until after it had fully transpired. He did, however, admit that he had lied to the police officers after his arrest about picking up the redheaded hitchhiker and buying the questioned articles from him.

We think it proper to state at this point, before examining in detail the assignments of error made by appellant's counsel, that we fully agree with the jury that the defendant's guilt was proven beyond a reasonable doubt. The evidence, in our opinion, was overwhelming.

Appellant makes the following contentions on the appeal: (1) that the court erred in giving and refusing certain instructions on circumstantial evidence; (2) that the trial court committed error in instructing the jury with respect to their duty not to consider the subject of penalty or punishment in their deliberations; (3) that the trial court and the deputy district attorney prosecuting the case were guilty of prejudicial misconduct in connection with the cross-examination of appellant's witness Steiner; and (4) that the testimony of one of the prosecuting witnesses, Tom Duffy, was so biased and colored that appellant's rights to a fair and impartial trial were prejudiced.

Taking up the first contention, the appellant refers to an instruction given by the court on circumstantial evidence which was proposed by defendant's counsel. This instruction read as follows:

"Two classes of evidence are recognized and admitted in courts of justice, upon either or both of which, juries lawfully may base their findings, whether favorable to the people or to the defendant, provided, however, that to support a verdict of guilt, the evidence, whether of one kind or the other or a combination of both, must carry the convincing quality required by law.

"One type of evidence is known as direct and the other as circumstantial. The law makes no distinction between the two classes as to the degree of proof required for conviction or as to their effectiveness in defendant's favor, but respects each for such convincing force as it may carry and accepts each as a reasonable method of proof.

"Direct evidence of a person's conduct at any time in question consists of the testimony of every witness who, with any of his own physical senses, perceived such conduct or any part thereof, and which testimony described or relates what thus was perceived. All other evidence admitted in the trial is circumstantial in relation to such conduct, and, in so far [sic] as it shows any act, statement or other conduct, or any circumstance or fact, tending to prove by reasonable inference the innocence or guilt of the defendant, it may be considered by you in arriving at a verdict."

 Appellant argues that this instruction allows the jury to convict him on the basis of reasonable inference irrespective of the lawful burden placed upon the People to prove him guilty beyond a reasonable doubt.

 In the first place, it should be noted that the rule of invited error applies to criminal as well as civil cases (*People* v. *Contreras*, 167 Cal.App.2d 288, 290 [334 P.2d 208]; *People* v. *Rubio*, 75 Cal.App.2d 697, 710 [171 P.2d 737]; Fricke, California Criminal Procedure (5th ed. 1959) Instructions, pp. 343-344), and that if there was error in the instruction given it was induced by the defendant himself, and he had no right to complain thereof. However, we find that the instruction is correct. It has often been given in criminal cases and is contained in California Jury Instructions (CALJIC) as Instruction No. 24. By its terms it specifically states that no matter whether the evidence is direct or indirect it ". . . must carry the convincing quality required by law." The jury was elsewhere correctly instructed as to the presumption of innocence and the burden of proof.

The appellant next complains that the court did not give two offered instructions relative to circumstantial evidence:

"I instruct you further that you are not permitted, on circumstantial evidence alone, or when the case of the People rests substantially on circumstantial evidence to find the defendant guilty of any crime charge[d] against him unless the proved circumstances not only are consistent with the hypothesis that the defendant is guilty of the crime but are irreconcilable with any other rational conclusion." (CALJIC No. 27.)

"When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt." (CALJIC No. 28.)

In this connection, the court did give CALJIC Instructions Nos. 21, 22 and 26 as follows: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows:

" 'It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.' "

"The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it."

"If the evidence in this case as to any particular count is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.

"You will notice that this rule applies only when both

of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.''

██ The crimes charged against appellant were burglary and grand theft, and the proof of a specific intent is required in each of these crimes. In the case of *People* v. *Yrigoyen,* 45 Cal.2d 46 [286 P.2d 1], it is held that where a crime is charged which requires proof of a specific intent it is error to fail to instruct fully on circumstantial evidence.

██ Where the jury's decision depends in part upon inferences, as in this case, it is requisite that the court give complete instructions on circumstantial evidence. (*People* v. *Bender,* 27 Cal.2d 164, 174-175 [163 P.2d 8]; *People* v. *Koenig,* 29 Cal.2d 87, 93 [173 P.2d 1]; *People* v. *Candiotto,* 128 Cal.App.2d 347, 355 [275 P.2d 500]; *People* v. *Yokum,* 145 Cal.App.2d 245 [302 P.2d 406].) The trial court should have given the two proposed instructions.

But the question remains: Was the error prejudicial? In the present case, in addition to the circumstantial evidence, there was uncontradicted direct testimony that appellant and Steiner had been and were close companions and had been living together; that grand theft was in fact committed at the Atwater Stationers; that appellant entered the store with Steiner and was present when the thievery took place; that the two friends entered together numerous other stores of the same type in the same territory within a period of two days, and that in each instance articles stolen from the various stores were offered for sale or actually sold by them to other people. In each of the instances the same common plan, scheme, and device were employed. As we have seen, appellant sold an Indian Head penny stolen from Mrs. Lichtenfeld's store to the Atwater Stationers. Numerous items of costume jewelry were stolen from Mr. Blackmon's store in Fresno, and appellant was the only one who had access in the shop to the stolen items and who had the opportunity to convert them. Within a few minutes thereafter appellant and Steiner attempted to sell these stolen items to Mr. Duffy at his Fresno store. Upon their arrest and the search that followed it, appellant was found to be in the possession of an encased

nickel stolen from the Atwater Stationers and two quarters stolen from the store operated by Miss White. In addition, many stolen articles were found in appellant's car. After the police allowed appellant to retain possession of the three encased coins, he and Steiner attempted to dispose of them by giving them to a trusty at the Merced County Jail and telling him to keep them and to get rid of the holders. Appellant further told a number of deliberate falsehoods concerning the purchase of the stolen articles from a redheaded hitchhiker. At the trial appellant took the witness stand and not only admitted that he had lied concerning the hitchhiker, but gave an incredible explanation of his conduct that the jury could not very well have believed. The jury could legitimately draw the inference that appellant and Steiner shared a mutual motive and that appellant knew of Steiner's criminal activity; the jurors clearly were not required to believe Steiner's testimony or that of Wright that he did not know of this activity repeated in so many instances in pursuance of what appeared to be a common plan of operation. Where the evidence of guilt is so overwhelming and when it is improbable that the jury could have reached any other result, it has always been held that failure to give complete instructions on circumstantial evidence does not constitute reversible error. (*People* v. *Roberts,* 167 Cal.App.2d 238 [334 P.2d 164]; *People* v. *Barkoff,* 163 Cal.App.2d 639 [329 P.2d 1005]; *People* v. *Kolb,* 174 Cal.App.2d 102 [344 P.2d 316]; *People* v. *Ely,* 170 Cal. App.2d 301 [338 P.2d 483]; *People* v. *Contreras, supra,* 167 Cal.App.2d 288 [334 P.2d 208]; *People* v. *Grace,* 166 Cal.App. 2d 68, 77 [332 P.2d 811]; *People* v. *Norton,* 141 Cal.App.2d 790, 794 [297 P.2d 439]; *People* v. *Webster,* 79 Cal.App.2d 321, 328 [179 P.2d 633]; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]; *People* v. *Bender, supra,* 27 Cal.2d 164, 176 [163 P.2d 8]; *People* v. *Williams,* 153 Cal.App.2d 5, 9 [314 P.2d 161].)

 Appellant complains of an instruction reading as follows: ''The subject of penalty or punishment should not be mentioned or considered in your deliberations in the jury room.

''The question of penalty, leniency and probation are solely for the decision of the trial judge. For the reason that at time of sentence the judge has the benefit of more information as to outside facts which must necessarily be considered in justly passing on the subject of penalty, such as past history, environment and former criminal record, if there be any. The

jury does not have this information before it and without such data, might be unduly severe, and on the other hand, might exercise undue leniency in favor of one whose past record would not merit any such consideration.''

The first two sentences are in conformity with CALJIC Instruction 9, and appellant does not question the propriety of that portion of the instruction, but contends that the parts added by the judge inevitably give the impression that the court believed the defendant guilty and also that he had information about him which could not be disclosed in evidence during the trial. While it is quite probable that the jury did not understand the instruction the way appellant thinks they did, but believed that the court was talking about any sentence of any convicted criminal and was referring to factors that related to punishment rather than guilt, it must be conceded that there is some ambiguity in that portion of the instruction added by the judge. It would have been better to make clear by the addition of a few words the fact that the court was talking generally and with no specific application to the instant case.

▆▆▆ The appellant next contends that the court and the prosecuting attorney were guilty of prejudicial misconduct because of their comments as to the codefendant Steiner. While the deputy district attorney was cross-examining Steiner, the following took place:

''Q. $56.00. And it consisted substantially of the materials here, is that correct? Will you take a look. Just stay in your seat. A. Oh, yes. I don't know, might have been a few more, a few less.

''Q. All right.

''MR. CURRY: Counsel, I don't quite understand you. You wanted him to stay in the seat and identify something from about 10 feet.

''MR. HALLFORD: I don't want him to get his hands on it, frankly.

''MR. CURRY: Well, if the Court please, I would like to cite those remarks as prejudicial misconduct and ask the jury be instructed——

''THE COURT: I don't see anything prejudicial about it. This is the man who is an admitted thief, coming here and telling you about it——

''MR. CURRY: My objection is not to deny that.

''THE COURT: The fact that he doesn't want him down there is a pretty good reason why.

"MR. CURRY: My objection is he asked him to identify something too long a distance.

"THE COURT: If he can't, he can come down there.

"MR. HALLFORD: If he can't identify them, let him say so. My remarks are based on the action this morning when he picked up the quarters there, and I didn't want him to get anything else."

During the morning session Steiner had handled and identified some of the stolen coins and had apparently attempted to withhold one of them.

The learned trial judge evidently believes in "calling a spade a spade." When he said that the witness was an admitted thief he, of course, was telling something that everybody in the courtroom knew, because Steiner admitted that he had entered a plea of guilty to grand theft in this very case. It is interesting, also, to observe that the defendant, as well as the People, concede that Steiner was a thief; in fact, the whole point of the defense was that repeated thefts had taken place, due to the wicked and malignant heart of Steiner, but without any knowledge on the part of the appellant. It is difficult to conceive how any harm was done to the defendant. ▮ However, we wish it noted that we think it improper for a trial judge to pass in any way upon the veracity of any witness during a jury trial. ▮ In other words, we believe this was error, but that it could not and did not prejudice the defendant to the point, at least, of requiring a reversal.

▮ The next contention made by the appellant is that the witness Tom Duffy was apparently so unused to testifying and so ignorant of the proper duty and attitude of a witness that he repeatedly gave hearsay testimony and showed his opinion as to the defendant's guilt. Objection was made to various answers, and the court sustained the objections and correctly admonished the jury to disregard the improper portions of the testimony. We do not believe that any prejudice was sustained by the defendant.

▮ In summary, the errors were not prejudicial under the provisions of article VI, section 4½ of the California Constitution. It would, therefore, be improper to reverse the judgment of conviction.

The judgment is affirmed.

Brown, J., and Stone, J., concurred.